## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS LITTLE ROCK DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 19 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

GREG RICE, AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF FRED RICE, AND ON
BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF FRED RICE

**PLAINTIFF**

vs.          **CASE NO. 60CV-16-3508**

ADCARE HEALTH SYSTEMS, INC.;
ADCARE ADMINISTRATIVE SERVICES, LLC;
WOODLAND HILLS HC NURSING, LLC D/B/A
WOODLAND HILLS HEALTHCARE AND
REHABILITATION; WOODLAND HILLS HC
PROPERTY HOLDINGS, LLC; ADCARE
OPERATIONS, LLC; RICHARD WEST, IN HIS
CAPACITY AS ADMINISTRATOR OF
WOODLAND HILLS HEALTHCARE AND
REHABILITATIONS DURING THE
RESIDENCY OF FRED RICE; JACQUELYN
CAMPBELL, IN HER CAPACITY AS DIRECTOR
OF NURSES OF WOODLAND HILLS HEALTHCARE
AND REHABILITATIONS DURING THE
RESIDENCY OF FRED RICE JOHN DOES
I-IX, THE UNKNOWN PERSON OR
PERSONS WHO HAD AUTHORITY TO AFFECT,
MAKE, ENFORCE, CHANGE, OR OTHERWISE
IMPLEMENT POLICIES, PROCEDURES,
BUDGETS, STAFFING OR OTHERWISE

*4:16 CV 599-JLH*

This case assigned to District Judge *Holmes*
and to Magistrate Judge *Harris*

**DEFENDANTS**

## NOTICE OF REMOVAL

Come now, Defendants, AdCare Operations, LLC; AdCare Administrative Services, LLC; AdCare Health Systems, Inc.; Woodland Hills HC Nursing, LLC; Woodland Hills HC Property Holdings, LLC; Richard West; and Jacquelyn Campbell ("Defendants"), by and through their attorneys, Hardin, Jesson & Terry, PLC, and for their Notice of Removal, do state:

1.      This action was filed by the Plaintiff in the Circuit Court of Pulaski County, Arkansas, on June 28, 2016.

1

2.     A true and correct copy of all process, pleadings, and orders served upon Defendants are attached hereto as Exhibit "A" and incorporated herein by this reference.

3.     Prior to filing this Notice of Removal Defendants filed their Answer to the Plaintiff's Complaint in the Circuit Court of Pulaski County, Arkansas. A true and correct copy of the Answer is attached hereto as Exhibit "B".

4.     The Complaint filed by the Plaintiff in this action alleges that Plaintiff is a citizen of California. Plaintiff brings a claim for wrongful death.

5.     AdCare Health Systems, Inc. is a citizen of the State of Georgia.  Woodland Hills HC Nursing, LLC; Woodland Hills HC Property Holdings, LLC; AdCare Operations, LLC; and AdCare Administrative Services, LLC are and at all times mentioned herein were citizens of states other than the state of Arkansas.  For purposes of determining citizenship, the citizenship of a limited liability company is that of its Members. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) (holding that "an LLC's citizenship for purposes of diversity jurisdiction is the citizenship of its members," quoting *Cosgrove v. Bartolotta*, 150 F.3d 729,731 (7th Cir. 1998)). The penultimate Member of Woodland Hills HC Nursing, LLC; Woodland Hills HC Property Holdings, LLC; AdCare Operations, LLC; and AdCare Administrative Services, LLC is AdCare Health Systems, Inc.

6.     Richard West and Jacquelyn Campbell are citizens of Arkansas.

7.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

8.     This Court has jurisdiction of the subject matter of this proceeding pursuant to 28 U.S.C. § 1332, and this case may properly be removed to this Court pursuant to 28 U.S.C. §§1441 and 1446.

9.      Pursuant to the procedural requirements of 28 U.S.C. §1446, AdCare Operations, LLC; AdCare Administrative Services, LLC; AdCare Health Systems, Inc.; Woodland Hills HC Nursing, LLC; Woodland Hills HC Property Holdings, LLC; Richard West; and Jacquelyn Campbell hereby gives notice of the removal of this cause to the United States District Court for the Eastern District of Arkansas, Little Rock Division.

WHEREFORE, AdCare Operations, LLC; AdCare Administrative Services, LLC; AdCare Health Systems, Inc.; Woodland Hills HC Nursing, LLC; Woodland Hills HC Property Holdings, LLC; Richard West; and Jacquelyn Campbell prays that this action be removed from the Circuit Court of Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, and for all other just and proper relief to which it may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
Attorneys at Law
P. O. Box 10127
Fort Smith, AR  72917-0127
(479) 452-2200

By:  _____

Kirkman T. Dougherty
Arkansas Bar No. 91133
Jeffrey W. Hatfield
Arkansas Bar No. 96235
Kynda Almefty
Arkansas Bar No. 2004197

## CERTIFICATE OF SERVICE

I, Kynda Almefty, one of the attorneys for the Defendants herein, do hereby certify that a true and correct copy of the above and foregoing pleading has been served upon the Plaintiffs by depositing the same in the United States Postal Mail Service, postage prepaid, addressed to:

Mr. Gene Ludwig
Mr. Kale Ludwig
Mr. Kyle Ludwig
**Ludwig Law Firm**
1 Three Rivers Dr.
Little Rock, AR 72223

on this 19th day of August, 2016.



## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### SIXTH DIVISION SIXTH CIRCUIT

**Greg Rice, as Special Administrator**
**of the Estate of Fred Rice, and on behalf**
**of the wrongful death beneficiaries of**
**Fred Rice**                                                                    **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;**
**Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare**
**And Rehabilitation; Woodland Hills HC Property Holdings, LLC;**
**AdCare Operations, LLC; Richard West, in his capacity**
**as administrator of Woodland Hills Healthcare and Rehabilitation**
**during the residency of Fred Rice; John Does I-IX, the unknown**
**person or persons who had authority to affect, make, enforce,**
**change, or otherwise implement policies, procedures,**
**budgets, staffing or otherwise**                                              **DEFENDANTS**

### CASE NO. 60CV-16-3508

# SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

AdCare Health Systems, Inc.
CT Corporation Systems,
1201 Peachtree Street NE
Atlanta, Georgia 30361

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) -- or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____
LARRY CRANE, CLERK OF COURT

EXHIBIT
A

Address of Clerk's Office

PULASKI COUNTY CIRCUIT COURT

401 West Markham Street

Little Rock, Arkansas 72201

By:_____

Date:_____



Arkansas Judiciary

**Case Title:**      GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**   60CV-16-3508

**Type:**          SUMMONS - FILER PREPARED


So Ordered

*Christy R McDaniel*

Christy McDaniel

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### SIXTH DIVISION SIXTH CIRCUIT

**Greg Rice, as Special Administrator**
**of the Estate of Fred Rice, and on behalf**
**of the wrongful death beneficiaries of**
**Fred Rice**                                                                      **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;**
**Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare**
**And Rehabilitation; Woodland Hills HC Property Holdings, LLC;**
**AdCare Operations, LLC; Richard West, in his capacity**
**as administrator of Woodland Hills Healthcare and Rehabilitation**
**during the residency of Fred Rice; John Does I-IX, the unknown**
**person or persons who had authority to affect, make, enforce,**
**change, or otherwise implement policies, procedures,**
**budgets, staffing or otherwise**                                          **DEFENDANTS**

### CASE NO. 60CV-16-3508

# SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

Woodland Hills HC Property Holdings, LLC
The Corporation Company
124 West Capitol Avenue
Little Rock, Arkansas 72201

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____
LARRY CRANE, CLERK OF COURT

Address of Clerk's Office

PULASKI COUNTY CIRCUIT COURT

401 West Markham Street

Little Rock, Arkansas 72201

By:_____

Date:_____



Arkansas Judiciary

**Case Title:**     GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**   60CV-16-3508

**Type:**          SUMMONS - FILER PREPARED

So Ordered

Christy McDaniel

Electronically signed by CRMCDANIEL on 2016-07-12 12:27:34     page 3 of 3

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### SIXTH DIVISION SIXTH CIRCUIT

**Greg Rice, as Special Administrator**
**of the Estate of Fred Rice, and on behalf**
**of the wrongful death beneficiaries of**
**Fred Rice**                                                                          **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;**
**Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare**
**And Rehabilitation; Woodland Hills HC Property Holdings, LLC;**
**AdCare Operations, LLC; Richard West, in his capacity**
**as administrator of Woodland Hills Healthcare and Rehabilitation**
**during the residency of Fred Rice; John Does I-IX, the unknown**
**person or persons who had authority to affect, make, enforce,**
**change, or otherwise implement policies, procedures,**
**budgets, staffing or otherwise**                                              **DEFENDANTS**

### CASE NO. 60CV-16-3508

# SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

Jacquelyn Campbell
101 Ricky Raccoon Dr.
Jacksonville, Arkansas 72076

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____

LARRY CRANE, CLERK OF COURT

Address of Clerk's Office

PULASKI COUNTY CIRCUIT COURT
401 West Markham Street
Little Rock, Arkansas 72201

By:_____

Date:_____



Arkansas Judiciary

**Case Title:**     GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**  60CV-16-3508

**Type:**           SUMMONS - FILER PREPARED


So Ordered

*Christy R McDaniel*

Christy McDaniel


Electronically signed by CRMCDANIEL on 2016-07-12 12:27:46     page 3 of 3

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**SIXTH DIVISION SIXTH CIRCUIT**

**Greg Rice, as Special Administrator**
**of the Estate of Fred Rice, and on behalf**
**of the wrongful death beneficiaries of**
**Fred Rice**                                                                                                    **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;**
**Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare**
**And Rehabilitation; Woodland Hills HC Property Holdings, LLC;**
**AdCare Operations, LLC; Richard West, in his capacity**
**as administrator of Woodland Hills Healthcare and Rehabilitation**
**during the residency of Fred Rice; John Does I-IX, the unknown**
**person or persons who had authority to affect, make, enforce,**
**change, or otherwise implement policies, procedures,**
**budgets, staffing or otherwise**                                                          **DEFENDANTS**

**CASE NO. 60CV-16-3508**

# SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

Woodland Hills HC Nursing, LLC
The Corporation Company
124 West Capitol Avenue
Little Rock, Arkansas 72201

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____                  .
LARRY CRANE, CLERK OF COURT

Address of Clerk's Office
PULASKI COUNTY CIRCUIT COURT                    By:_____
401 West Markham Street
Little Rock, Arkansas 72201
                                                Date:_____



Arkansas Judiciary

**Case Title:**      GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**   60CV-16-3508

**Type:**            SUMMONS - FILER PREPARED


So Ordered

*Christy R McDaniel*

Christy McDaniel


Electronically signed by CRMCDANIEL on 2016-07-12 12:28:04     page 3 of 3

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### SIXTH DIVISION SIXTH CIRCUIT

**Greg Rice, as Special Administrator**
**of the Estate of Fred Rice, and on behalf**
**of the wrongful death beneficiaries of**
**Fred Rice**                                                       **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;**
**Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare**
**And Rehabilitation; Woodland Hills HC Property Holdings, LLC;**
**AdCare Operations, LLC; Richard West, in his capacity**
**as administrator of Woodland Hills Healthcare and Rehabilitation**
**during the residency of Fred Rice; John Does I-IX, the unknown**
**person or persons who had authority to affect, make, enforce,**
**change, or otherwise implement policies, procedures,**
**budgets, staffing or otherwise**                             **DEFENDANTS**

### CASE NO. 60CV-16-3508

# SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

Richard West
P.O. Box 264
Royal, Arkansas 71968

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____
LARRY CRANE, CLERK OF COURT

Address of Clerk's Office

PULASKI COUNTY CIRCUIT COURT                    By:_____
401 West Markham Street
Little Rock, Arkansas 72201

                                                Date:_____



Arkansas Judiciary

**Case Title:**     GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**   60CV-16-3508

**Type:**          SUMMONS - FILER PREPARED

So Ordered

*Christy R McDaniel*

Christy McDaniel

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
SIXTH DIVISION SIXTH CIRCUIT**

**Greg Rice, as Special Administrator
of the Estate of Fred Rice, and on behalf
of the wrongful death beneficiaries of
Fred Rice**                                                                         **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;
Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare
And Rehabilitation; Woodland Hills HC Property Holdings, LLC;
AdCare Operations, LLC; Richard West, in his capacity
as administrator of Woodland Hills Healthcare and Rehabilitation
during the residency of Fred Rice; John Does I-IX, the unknown
person or persons who had authority to affect, make, enforce,
change, or otherwise implement policies, procedures,
budgets, staffing or otherwise**                                                **DEFENDANTS**

**CASE NO. 60CV-16-3508**

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

AdCare Operations, LLC
CT Corporation Systems,
1201 Peachtree Street NE
Atlanta, Georgia 30361

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas -- you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____

LARRY CRANE, CLERK OF COURT

Address of Clerk's Office
PULASKI COUNTY CIRCUIT COURT
401 West Markham Street
Little Rock, Arkansas 72201

By:_____

Date:_____



Arkansas Judiciary

**Case Title:**      GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**   60CV-16-3508

**Type:**            SUMMONS - FILER PREPARED

So Ordered

*Christy R McDaniel*

Christy McDaniel

Electronically signed by CRMCDANIEL on 2016-07-12 12:28:46    page 3 of 3

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## SIXTH DIVISION SIXTH CIRCUIT

**Greg Rice, as Special Administrator
of the Estate of Fred Rice, and on behalf
of the wrongful death beneficiaries of
Fred Rice**                                                             **PLAINTIFF**

**vs.**

**AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;
Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare
And Rehabilitation; Woodland Hills HC Property Holdings, LLC;
AdCare Operations, LLC; Richard West, in his capacity
as administrator of Woodland Hills Healthcare and Rehabilitation
during the residency of Fred Rice; John Does I-IX, the unknown
person or persons who had authority to affect, make, enforce,
change, or otherwise implement policies, procedures,
budgets, staffing or otherwise**                                        **DEFENDANTS**

### CASE NO. 60CV-16-3508

# SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

AdCare Administrative Services, LLC
CT Corporation Systems,
1201 Peachtree Street NE
Atlanta, Georgia 30361

# NOTICE

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

KYLE P. LUDWIG
1 THREE RIVERS DRIVE
LITTLE ROCK, AR 72223

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices: None.

_____
LARRY CRANE, CLERK OF COURT

Address of Clerk's Office
PULASKI COUNTY CIRCUIT COURT
401 West Markham Street
Little Rock, Arkansas 72201

By:_____

Date:_____



Arkansas Judiciary

**Case Title:**   GREGORY RICE ET AL V ADCARE HEALTH SYSTEM

**Case Number:**   60CV-16-3508

**Type:**   SUMMONS - FILER PREPARED

So Ordered

*Christy R McDaniel*

Christy McDaniel

Electronically signed by CRMCDANIEL on 2016-07-12 12:29:45     page 3 of 3

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Aug-19 14:32:31
60CV-16-3508
C06D06 : 26 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### SIXTH DIVISION SIXTH CIRCUIT

GREG RICE, AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF FRED RICE, AND ON
BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF FRED RICE                                    PLAINTIFF

vs.                     **CASE NO. 60CV-16-3508**

ADCARE HELATH SYSTEMS, INC.;
ADCARE ADMINISTRATIVE SERVICES, LLC;
WOODLAND HILLS HC NURSING, LLC D/B/A
WOODLAND HILLS HEALTHCARE AND
REHABILITATION; WOODLAND HILLS HC
PROPERTY HOLDINGS, LLC; ADCARE
OPERATIONS, LLC; RICHARD WEST, IN HIS
CAPACITY AS ADMINISTRATOR OF
WOODLAND HILLS HEALTHCARE AND
REHABILITATIONS DURING THE
RESIDENCY OF FRED RICE; JOHN DOES
I-IX, THE UNKNOWN PERSON OR
PERSONS WHO HAD AUTHORITY TO AFFECT,
MAKE, ENFORCE, CHANGE, OR OTHERWISE
IMPLEMENT POLICIES, PROCEDURES,
BUDGETS, STAFFING OR OTHERWISE                               DEFENDANTS


### ANSWER TO COMPLAINT

Come now AdCare Operations, LLC; AdCare Administrative Services, LLC; AdCare

Health Systems, Inc.; Woodland Hills HC Nursing, LLC; Woodland Hills HC Property

Holdings, LLC; Richard West; and Jacquelyn Campbell, (collectively "Defendants"), by and

through their attorneys, Hardin, Jesson & Terry, PLC, and for their Answer to Plaintiff's

Complaint, state as follows:



EXHIBIT
B

1.      Paragraph 1 of Plaintiff's Complaint, also entitled "Introduction," contains legal arguments and conclusions of law to which no responsive pleading is required by Defendants.  To the extent a response is required, the allegations are denied.

2.      In response to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Defendants admit that Exhibit A is an Order appointing Gregory Rice as Special Administrator of the Estate of Fred Rice.

3.      Defendants are without sufficient information, knowledge, or belief to admit or deny the allegations set forth in Paragraph 3 of Plaintiff's Complaint, and, therefore, those allegations are denied.

4.      In response to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Mr. Rice's medical chart and facility records best reflect his dates of residency at Woodland Hills HC Nursing.  Defendants admit that at the time of his residency, Mr. Rice was an Arkansas citizen.  The remaining allegations in Paragraph 4 of Plaintiff's Complaint consist of legal arguments and conclusions of counsel to which no response is required by Defendants.  To the extent a response is required, the allegations are denied.

5.      In response to the allegations contained in Paragraph 5 of Plaintiff's Complaint, AdCare Health Systems, Inc., admits that it is a foreign corporation and that its agent for service of process is CT Corporation Systems in Atlanta, Georgia.  All remaining allegations set forth in Paragraph 5 of Plaintiff's Complaint are denied.

6.      In response to the allegations contained in Paragraph 6 of Plaintiff's Complaint, AdCare Administrative Services, LLC, admits that it is a foreign corporation that did business in the State of Arkansas and that its agent for service of process is CT Corporation Systems in

Atlanta, Georgia. All remaining allegations set forth in Paragraph 6 of Plaintiff's Complaint are denied.

7.      In response to the allegations contained in Paragraph 7 of Plaintiff's Complaint, Woodland Hills HC Nursing LLC admits that it is a foreign corporation that did business in the State of Arkansas and that its agent for service of process is The Corporation Company in Little Rock, Arkansas. All remaining allegations set forth in Paragraph 7 of Plaintiff's Complaint are denied.

8.      In response to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Woodland Hills HC Property Holdings, LLC, admits that it is a foreign corporation that did business in the State of Arkansas and that its agent for service of process is The Corporation Company in Little Rock, Arkansas. All remaining allegations set forth in Paragraph 8 of Plaintiff's Complaint are denied.

9.      In response to the allegations contained in Paragraph 9 of Plaintiff's Complaint, AdCare Operations, LLC, admits that it is a foreign corporation and that its agent for service of process is CT Corporation Systems in Atlanta, Georgia. All remaining allegations set forth in Paragraph 9 of Plaintiff's Complaint are denied.

10.      Richard West admits that he is a citizen of Arkansas and was the Administrator of Woodland Hills HC Nursing during part of the residency of Mr. Rice. All remaining allegations set forth in Paragraph 10 of Plaintiff's Complaint are denied.

11.      Jacquelyn Campbell admits that she is a citizen of Arkansas and was the Director of Nursing of Woodland Hills HC Nursing during a part of the residency of Mr. Rice. All remaining allegations set forth in Paragraph 11 of Plaintiff's Complaint are denied.

12.     Defendants object to jurisdiction and venue in this Court.   The remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are directed to other not yet named Defendants in this action and, therefore, no response is required of these Defendants.   To the extent a response is deemed required, the allegations are denied.

13.     The allegations contained in Paragraph 13 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.   To the extent Paragraph 13 is construed to state allegations against Defendants, the allegations are denied.

14.     The allegations contained in Paragraph 14 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.   To the extent Paragraph 14 is construed to state allegations against Defendants, the allegations are denied.

15.     The allegations contained in Paragraph 15 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.   To the extent Paragraph 15 is construed to state allegations against Defendants, the allegations are denied.

16.     Defendants deny the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.     Defendants deny the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18.     Defendants deny the allegations contained in Paragraph 18 of Plaintiff's Complaint.

4

19.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 19 of Plaintiff's Complaint, as written.

20.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 20 of Plaintiff's Complaint, as written.

21.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 21 of Plaintiff's Complaint, as written.

22.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 22 of Plaintiff's Complaint, as written.

23.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 23 of Plaintiff's Complaint, as written.

24.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 24 of Plaintiff's Complaint, as written.

25.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 25 of Plaintiff's Complaint, as written.

26.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 26 of Plaintiff's Complaint, as written.

27.    Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 27 of Plaintiff's Complaint, as written.

28.    In response to the allegations contained in Paragraph 28 of Plaintiff's Complaint, Mr. Rice's medical chart and facility records best reflect his dates of residency at Woodland Hills HC Nursing.

29.     In response to the allegations contained in Paragraph 29 of Plaintiff's Complaint, Mr. Rice's medical chart and facility records best reflect his medical condition and Woodland Hills HC Nursing's knowledge of his medical condition.

30.     Woodland Hills HC Nursing admits that it was certified for participation in the Medicaid-Medicare program, and was, therefore, required to comply with certain federal regulations applicable to such certification. The remaining allegations contained in Paragraph 30 of Plaintiff's Complaint, including sub-parts (a) through (d), consist of legal conclusions and arguments of counsel to which no responsive pleading is required. To the extent that any additional responsive pleading may be required, the allegations are denied by all Defendants herein.

31.     Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 31 of Plaintiff's Complaint, as written.

32.     Defendants deny the allegations, arguments of counsel and legal conclusions contained in Paragraph 32 of Plaintiff's Complaint, as written.

33.     In response to the allegations contained in Paragraph 33 of Plaintiff's Complaint, Defendants admit that Rules and Regulations were in existence. The Rules and Regulations speak for themselves, and to the extent the allegations contained in Paragraph 33 of Plaintiff's Complaint are inconsistent with the language of the Rules and Regulations, those allegations are denied.

34.     Defendants deny the allegations contained in Paragraph 34 of Plaintiff's Complaint, including subparts (a) through (f).

35.     Defendants deny the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.     Defendants deny the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.     With respect to the allegations contained in Paragraph 38 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

39.     The allegations contained in Paragraph 39 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

40.     The allegations contained in Paragraph 40 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

41.     The allegations contained in Paragraph 41 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

42.     The allegations contained in Paragraph 42 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

43.     The allegations contained in Paragraph 43 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

44.     Defendants deny the allegations contained in Paragraph 44 of Plaintiff's Complaint, including sub-parts (a) through (o).

45.     Defendants deny the allegations contained in Paragraph 45 of Plaintiff's Complaint, including sub-parts (a) through (j).

46.     Defendants deny the allegations contained in Paragraph 46 of Plaintiff's Complaint, including sub-parts (a) through (j).

47.     Defendants deny the allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.     With respect to the allegations contained in Paragraph 49 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

50.     In response to the allegations contained in Paragraph 50 of Plaintiff's Complaint, Separate Defendant Woodland Hills HC Nursing admits that it is a medical provider. Defendants deny the remaining allegations contained in Paragraph 50 of Plaintiff's Complaint, as written.

51.     The allegations contained in Paragraph 51 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

52.     The allegations contained in Paragraph 52 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Defendants. To the extent that any responsive pleading may be required by Defendants, the allegations are denied.

53.     Defendants deny the allegations contained in Paragraph 53 of Plaintiff's Complaint, including sub-parts (a) through (g).

54.     Defendants deny the allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.     Defendants deny the allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.     Defendants deny the allegations contained in Paragraph 56 of Plaintiff's Complaint.

57.     With respect to the allegations contained in Paragraph 57 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

58.     In response to the allegations contained in Paragraph 58 of Plaintiff's Complaint, Defendants admit that an Admission Agreement between Woodland Hills HC Nursing and Mr. Rice exists.

59.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59 of Plaintiff's Complaint, and therefore the allegations are denied.

60.     Defendants deny the allegations contained in Paragraph 60 of Plaintiff's Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of Plaintiff's Complaint.

62.     Defendants deny the allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.     With respect to the allegations contained in Paragraph 63 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

64.     In response to the allegations contained in Paragraph 64 of Plaintiff's Complaint, Defendants admit that the Arkansas Resident's Rights Act was in existence at times relevant to this matter.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 64

of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

65.     The allegations contained in Paragraph 65 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.  To the extent Paragraph 65 is construed to state allegations against Defendants, Defendants admit that the Arkansas Resident's Rights Act was in existence at times relevant to this matter.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 65 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

66.     The allegations contained in Paragraph 66 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.  To the extent Paragraph 66 is construed to state allegations against Defendants, Defendants admit that the Arkansas Resident's Rights Act was in existence at times relevant to this matter.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 66 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

67.     The allegations contained in Paragraph 67 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by these Defendants. To the extent that any responsive pleading may be required by these Defendants, the allegations are denied.

68.     The allegations contained in Paragraph 68 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by these

Defendants. To the extent that any responsive pleading may be required by these Defendants, the allegations are denied.

69.    Defendants deny the allegations contained in Paragraph 69 of Plaintiff's Complaint, including sub-parts (a) through (k).

70.    Defendants deny the allegations contained in Paragraph 70 of Plaintiff's Complaint.

71.    Defendants deny the allegations contained in Paragraph 71 of Plaintiff's Complaint.

72.    Defendants deny the allegations contained in Paragraph 72 of Plaintiff's Complaint.  Defendants deny that Plaintiff is entitled to any damages.

73.    With respect to the allegations contained in Paragraph 73 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

74.    Defendants admit that a Provider Agreement is attached to Plaintiff's Complaint as Exhibit D and that the document speaks for itself.  To the extent the allegations contained in Paragraph 74 of Plaintiff's Complaint are inconsistent with the Provider Agreement, those allegations are denied.  Defendants deny the remaining allegations in Paragraph 74 of Plaintiff's Complaint.

75.    In response to the allegations contained in Paragraph 75 of Plaintiff's Complaint, Defendants admit that a Provider Agreement exists and state that the document speaks for itself. To the extent the allegations contained in Paragraph 75 of Plaintiff's Complaint are inconsistent

with the Provider Agreement, those allegations are denied.   Defendants deny the remaining allegations and arguments of counsel contained in Paragraph 75 of Plaintiff's Complaint.

76.    The allegations contained in Paragraph 76 of Plaintiff's Complaint are denied, as written.

77.    Defendants admit that a certification of MDS information was required and state that the certification speaks for itself.   Defendants deny the remaining allegations and arguments of counsel contained in Paragraph 77 of Plaintiff's Complaint.

78.    The allegations contained in Paragraph 78 of Plaintiff's Complaint, including subparts (a) through (g), are denied.

79.    The allegations contained in Paragraph 79 of Plaintiff's Complaint are denied. Defendants deny that Plaintiff is entitled to any damages.

80.    The allegations contained in Paragraph 80 of Plaintiff's Complaint are denied. Defendants deny that Plaintiff is entitled to any damages.

81.    The allegations contained in Paragraph 81 of Plaintiff's Complaint are denied. Defendants deny that Plaintiff is entitled to any damages.

82.    The allegations contained in Paragraph 82 of Plaintiff's Complaint are denied. Defendants deny that Plaintiff is entitled to any damages.

83.    With respect to the allegations contained in Paragraph 83 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

84.    The allegations contained in Paragraph 84 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no

response is required by Defendants.  To the extent Paragraph 84 is construed to state allegations against Defendants, Defendants admit that the Arkansas Deceptive Trade Practices Act was in existence.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 84 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.  Defendants deny any remaining allegations and arguments of counsel set forth in Paragraph 84 of Plaintiff's Complaint.

85.     The allegations contained in Paragraph 85 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.  To the extent Paragraph 85 is construed to state allegations against Defendants, Defendants admit that the Arkansas Deceptive Trade Practices Act was in existence.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 85 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

86.     The allegations contained in Paragraph 86 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.  To the extent Paragraph 86 is construed to state allegations against Defendants, Defendants admit that the Arkansas Deceptive Trade Practices Act was in existence.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 86 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

87.     Defendants deny the allegations contained in Paragraph 87 of Plaintiff's Complaint.  Defendants deny that Plaintiff is entitled to any damages.

88.     Defendants deny the allegations contained in Paragraph 88 of Plaintiff's Complaint, as written.

89.     Defendants deny the allegations contained in Paragraph 89 of Plaintiff's Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of Plaintiff's Complaint.

91.     Defendants deny the allegations contained in Paragraph 91 of Plaintiff's Complaint.

92.     Defendants deny the allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.     Defendants deny the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.     Defendants deny the allegations contained in Paragraph 94 of Plaintiff's Complaint.

95.     Defendants deny the allegations contained in Paragraph 95 of Plaintiff's Complaint.  Defendants deny that Plaintiff is entitled to any damages.

96.     With respect to the allegations contained in Paragraph 96 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

97.     Defendants deny the allegations contained in Paragraph 97 of Plaintiff's Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of Plaintiff's Complaint.

99.     Defendants deny the allegations contained in Paragraph 99 of Plaintiff's Complaint.  Defendants deny that Plaintiff is entitled to any damages.

100.    With respect to the allegations contained in Paragraph 100 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

101.    The allegations contained in Paragraph 101 of Plaintiff's Complaint fail to state facts against Defendants as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendants.  To the extent Paragraph 101 is construed to state allegations against Defendants, the allegations are denied.

102.    The allegations contained in Paragraph 102 of Plaintiff's Complaint are denied.

103.    Defendants deny the allegations contained in Paragraph 103 of Plaintiff's Complaint.

104.    Defendants deny the allegations contained in Paragraph 104 of Plaintiff's Complaint.  Defendants deny that Plaintiff is entitled to any damages.

105.    With respect to the allegations contained in Paragraph 105 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

106.    In response to the allegations contained in Paragraph 106 of Plaintiff's Complaint, Separate Defendant Richard West admits that he was the Administrator of Woodland Hills HC Nursing during a part of the residency of Mr. Rice.

16

107.    Separate Defendant Richard West denies the allegations contained in the last sentence of Paragraph 107.  The remaining allegations contained in Paragraph 107 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by this Defendant. To the extent that any responsive pleading may be required, the allegations are denied.

108.    With respect to the allegations contained in Paragraph 108 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

109.    The allegations contained in Paragraph 109 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Separate Defendant Richard West. To the extent that any responsive pleading may be required, the allegations are denied.

110.    The allegations contained in Paragraph 110 of Plaintiff's Complaint, including subparts (a) through (h), are denied.

111.    The allegations contained in Paragraph 111 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Separate Defendant Richard West. To the extent that any responsive pleading may be required, the allegations are denied.

112.    The allegations contained in Paragraph 112 of Plaintiff's Complaint are denied. Separate Defendant denies that Plaintiff is entitled to any damages.

17

113.   With respect to the allegations contained in Paragraph 113 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

114.   In response to the allegations contained in Paragraph 114 of Plaintiff's Complaint, based upon information and belief, Separate Defendant Jackie Campbell was the Director of Nursing at Woodland Hills HC Nursing during a part of Mr. Rice's residency.

115.   Separate Defendant Jackie Campbell denies the allegations contained in the last sentence of Paragraph 115.  The remaining allegations contained in Paragraph 115 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by this Defendant. To the extent that any responsive pleading may be required, the allegations are denied.

116.   With respect to the allegations contained in Paragraph 116 of Plaintiff's Complaint, Defendants incorporate by this reference all allegations and denials previously set forth in this Answer.

117.   The allegations contained in Paragraph 117 of Plaintiff's Complaint consist of legal conclusions and arguments of counsel to which no responsive pleading is required by Separate Defendant. To the extent that any responsive pleading may be required by Separate Defendant, the allegations are denied.

118.   Separate Defendant denies the allegations contained in Paragraph 118 of Plaintiff's Complaint, including sub-parts (a) through (h).

119.   Separate Defendant denies the allegations contained in Paragraph 119 of Plaintiff's Complaint.

120.     Separate Defendant denies the allegations contained in Paragraph 120 of Plaintiff's Complaint.  Separate Defendant denies that Plaintiff is entitled to any damages.

121.     Defendants deny that Plaintiff is entitled to the relief sought in the WHEREFORE paragraph, including subparts (1) through (7), or prayer for relief within Plaintiff's Complaint.

122.     Defendants deny all allegations contained in the Plaintiff's Complaint not specifically admitted herein.

123.     Pleading further, and in the affirmative, Defendants assert the defenses of statute of limitation, insufficiency of service, insufficiency of process, comparative negligence, intervening cause, Act of God, privity, waiver, estoppels, laches and negligence or intentional acts of third parties over whom these Defendants exercise no dominion or control as complete and/or partial bars to any recovery by the Plaintiff herein.  Defendants further state in the affirmative that all of Plaintiff's claims are subsumed by the Arkansas Medical Malpractice Act.

124.     Defendants affirmatively assert that Plaintiff's claims are barred, in whole or in part, because any damages allegedly suffered were not proximately caused by Defendants' conduct.

125.     Defendants affirmatively assert that the claims against them fail to state a cause of action upon which relief can be granted and should be dismissed as a matter of law.

126.     Defendants affirmatively assert that Plaintiff's claims for alleged violations of the Arkansas Long Term Care Resident's Rights Act, Arkansas Code Annotated § 20-10-1201 *et seq.,* the Arkansas Deceptive Trade Practices Act, Arkansas Code Annotated 4-88-101 *et seq.,* and breach of contract should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for failure to state facts upon which relief can be granted.  Defendants

19

affirmatively assert that all claims alleged are superseded by the statutory scheme set forth in the Arkansas Medical Malpractice Act.

127.    Defendants affirmatively assert that Plaintiff's claim for alleged violations of Arkansas Code Annotated § 20-10-1201 *et seq.* should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure because Plaintiff does not have a private cause of action pursuant to this statute.

128.    Defendants affirmatively assert that Plaintiff's claim of negligence is drafted as a medical negligence claim and is, therefore, superseded by the Arkansas Medical Malpractice Act and should be dismissed.

129.    Defendants deny that their conduct was grossly negligent, flagrant, willful, wanton, reckless, malicious, intentional, or conducted with conscious indifference to the rights of Mr. Rice or any resident.

130.    Separate Defendants AdCare Operations, LLC; AdCare Administrative Services, LLC; AdCare Health Systems, Inc.; Woodland Hills HC Property Holdings, LLC and Richard West  affirmatively assert that Plaintiff's claim of medical negligence pursuant to the Arkansas Medical Malpractice Act should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for failure to state facts upon which relief can be granted, as they are not medical care providers as required for liability pursuant to this Act.

131.    Defendants affirmatively assert that Plaintiff's claims for liability based upon any violation of the Arkansas Deceptive Trade Practices Act should be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure pursuant to

Arkansas Code Annotated § 4-88-101 and as Plaintiff has suffered no actual damages and lacks standing to pursue such claims.

132. Defendants affirmatively assert that Plaintiff's claims for liability based upon any violation of the Arkansas Deceptive Trade Practices Act should be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure pursuant to Arkansas Code Annotated § 4-88-101 and as Plaintiff fails to plead any factual assertion by Defendants upon which a reasonable person could rely.

133. Defendants affirmatively assert that Plaintiff's claims for liability based upon any violation of the Arkansas Deceptive Trade Practices Act should be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure pursuant to Arkansas Code Annotated § 4-88-101 and as Plaintiff fails to plead facts sufficient to show that actual reliance on any representations or conduct by Defendants.

134. Defendants affirmatively assert that Plaintiff's claim for alleged breach of Provider Agreement should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure because there is no cause of action under the Agreement.

135. Defendants affirmatively assert that Plaintiff's claims for liability based upon theories of joint venture, joint enterprise, or any similar or related theories are without basis in fact or law, and should be dismissed as a matter of law.

136. Defendants affirmatively plead that Plaintiff's Complaint fails to state facts sufficient to justify an award of punitive damages.

137. Defendants affirmatively plead and assert that any claim for punitive damages is pre-empted by the federal statutory and regulatory scheme related to nursing homes.

138.   Defendants affirmatively plead that Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under Arkansas law by a jury does not provide constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award.

139.   Defendants affirmatively plead that Plaintiff's claim for punitive damages against all or any of these Defendants is barred, in whole or in part, because an award of punitive damages under Arkansas law would violate the Defendants' due process rights and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

140.   Defendants affirmatively plead that Plaintiff's claim for punitive damages cannot be sustained because Arkansas law regarding the standards for determining liability for and the amount of punitive damages fail to give the Defendants prior notice of the conduct for which punitive damages may be imposed, and the severity of the penalty that may be imposed, and are void for vagueness in violation of these Defendants' due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

141.   Defendants affirmatively assert that Plaintiff's claims for punitive damages against these Defendants cannot be sustained, because an award of punitive damages under Arkansas law, subject to no predetermined limit, such as a maximum multiple of compensatory damages, or a maximum amount on the amount of punitive damages that may be imposed, would violate these Defendants' due process rights guaranteed by the Fifth and Fourteenth

Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

142.   Defendants affirmatively plead that Plaintiff's claims for punitive damages against these Defendants cannot be sustained, because an award of punitive damages under Arkansas law which allows Plaintiff to prejudicially emphasize the corporate status of any of these Defendants violates such Defendants' due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution, and would be improper under the common law and public policy of Arkansas.

143.   Defendants affirmatively assert that Plaintiff's claim for punitive damages against these Defendants cannot be sustained because any award of punitive damages made under a process which fails to bifurcate the issue of punitive damages from the remaining issues would violate the Defendants' due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution, and would be improper under the common law and public policy of Arkansas.

144.   Defendants affirmatively assert that Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under Arkansas law by a jury that (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award, (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award for punitive damages, in whole or in part on the basis of invidiously

discriminatory characteristics, including without limitation the residence, wealth and corporate status of Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, (5) is not properly instructed regarding Plaintiff's burden of proof with respect to each and every element of a claim for punitive damages, and (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards.  This would violate Defendants' due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution, and would be improper under the common law and public policy of Arkansas.

145.   Plaintiff's claim for punitive damages against Defendants cannot be sustained, because an award of punitive damages in this case, combined with any prior, contemporaneous, or subsequent judgments against Defendants for punitive damages, would constitute impermissible multiple punishments in violation of Defendants' due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

146.   Defendants affirmatively assert the right to plead further, including reservation of all affirmative defenses allowed under Arkansas law which are required to be pled in the initial pleading and all third party claims which may be appropriate.

WHEREFORE, premises considered, AdCare Operations, LLC; AdCare Administrative Services, LLC; AdCare Health Systems, Inc.; Woodland Hills HC Nursing, LLC; Woodland Hills

HC Property Holdings, LLC; Richard West; and Jackie Campbell pray that the Complaint of the Plaintiff be dismissed, for their costs and expenses herein laid out and expended, and for any and all other relief to which they may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
Attorneys at Law
P. O. Box 10127
Fort Smith, AR  72917-0127
(479) 452-2200

By:      /s/ Kynda Almefty

Kirkman T. Dougherty
Arkansas Bar No. 91133
kdougherty@hardinlaw.com
Jeffrey W. Hatfield
Arkansas Bar No. 96235
jhatfield@hardinlaw.com
Kynda Almefty
Arkansas Bar No. 2004197
kalmefty@hardinlaw.com

## CERTIFICATE OF SERVICE

I, Kynda Almefty, one of the attorneys for the Defendant herein, do hereby certify that a true and correct copy of the above and foregoing pleading has been served upon the Plaintiff via eFlex filing:

Mr. Gene Ludwig
Mr. Kale Ludwig
Mr. Kyle Ludwig
**Ludwig Law Firm**
1 Three Rivers Dr.
Little Rock, AR 72223

on this 19th day of August, 2016.

/s/ Kynda Almefty

25

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jun-28 16:07:33
60CV-16-3508
C06D06 : 40 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION, SIXTH CIRCUIT

Gregory Rice, as Special Administrator
of the Estate of Fred Rice, and on behalf of
the wrongful death beneficiaries of Fred Rice                PLAINTIFF

v.

AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;
Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare
and Rehabilitation; Woodland Hills HC Property Holdings, LLC;
AdCare Operations, LLC; Richard West, in his capacity as
Administrator of Woodland Hills Healthcare and
Rehabilitation during the residency of Fred Rice;
Jacquelyn Campbell, in her capacity as Director of Nursing of
Woodland Hills Healthcare and Rehabilitation during
the residency of Fred Rice; John Does I-IX,
the unknown person or persons who had authority to
affect, make, enforce, change, or otherwise implement
policies, procedures, budgets, staffing or other aspects of the
nursing home including, but not limited to, those which relate or
refer to any of the allegations in this Complaint; John Does X-XV,
the temporary staffing agencies or the agents or employees
of same who may have provided negligent or below-standard care to
Fred Rice, and John Does XVI-XX, the estates of any
Defendants, named or unnamed, who are deceased or become
deceased before service of this Complaint                DEFENDANTS

## COMPLAINT

COMES NOW the Plaintiff, Gregory Rice, as Special Administrator of the Estate of Fred

Rice, deceased, and on behalf of the wrongful death beneficiaries of Fred Rice, by and through

his attorneys, Ludwig Law Firm, PLC, and for his causes of action against Defendants, states as

follows:

## INTRODUCTION

1.   This is a case about the effect of systematic understaffing in a multi-state nursing

home chain on Fred Rice, a vulnerable resident of one Little Rock facility. AdCare Health

Systems, Inc. and its subsidiaries set staffing budgets at statutory minimum staffing levels at that

1

facility. Then, AdCare minders drove facility administrators with daily emails to beat those too-low numbers. Because of that policy, direct-care staff at Woodland Hills Healthcare and Rehabilitation, among other issues, neglected Mr. Rice and he suffered multiple falls as a result of trying to get himself out of bed when no one answered his call. Even after the staff was on notice that he was severe fall risk, they failed to implement adequate protection to keep Mr. Rice from further falls. Lack of attention meant that he developed painful bedsores from the simple failure to turn or alleviate pressure points.

Lack of time to care for Mr. Rice caused staff at the nursing home to engage in administering chemical restraints to Mr. Rice. His family knew that he was being overmedicated to the point of incoherence and requested a reduction in his medication, so that he could participate fully in life. They were denied that request. Instead, Mr. Rice was given strong painkillers via a stick-on patch that effectively drugged him non-stop, while also conveniently relieving the facility staff from having to administer medication as often as would be required with pills.

Horrifyingly, the *de facto* policy of resident neglect caused Mr. Rice to become so dehydrated that it was ultimately one of the causes of his death.

## JURISDICTIONAL STATEMENT

2. Gregory L. Rice is the Special Administrator of the Estate of Fred Rice as shown by the June 28, 2016 Letters of Special Administration, which is attached hereto as *Exhibit A*, and brings this action on behalf of Fred Rice.

3. Gregory L. Rice is Fred Rice's son. Gregory L. Rice resides at 2236 Gateway Oaks Dr., Apartment 327, Sacramento, California, 95833.

4. Fred Rice was an Arkansas citizen. Other than hospitalizations, Fred Rice was a resident of Woodland Hills Healthcare and Rehabilitation, (sometimes referred to as "facility"), a nursing home located at 8701 Riley Drive, Little Rock, Arkansas from approximately February

21, 2014 until his death on May 4, 2015. Because of age- or disease-related cognitive impairment, he had no capacity to make financial or legal decisions for himself or appreciate his legal rights at any time during the residency.

5.     Defendant Adcare Health Systems, Inc. is a foreign corporation and did business in the State of Arkansas operating, managing, owning, controlling, and/or providing services for Woodland Hills Healthcare and Rehabilitation. The causes of action detailed in this Complaint arise from the business conducted within the State of Arkansas by Defendant Adcare Health Systems, Inc.'s operation, management, ownership, control, and/or provision of services to the facility during the residency of Fred Rice. At all times material to this action, Adcare Health Systems, Inc. was a control person as defined in Ark. Code Ann § 4-88-113(d)(1) and a joint venturer and civil conspirator with its co-defendants, and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Adcare Health Systems, Inc. is CT Corporation Systems, 1201 Peachtree Street, NE, Atlanta, Georgia 30361, or any office thereof.

6.     Defendant. Adcare Administrative Services, LLC is a foreign limited liability company and was authorized to do business and did business in the State of Arkansas by contracting and providing support services for Woodland Hills Healthcare and Rehabilitation pursuant to an Administrative Support Agreement. At all times material to this action, Adcare Administrative Services, LLC was a control person as defined by Ark. Code Ann § 4-88-113(d)(1) and a joint venturer and civil conspirator with its co-defendants, and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Adcare Administrative Services, LLC is CT Corporation Systems, 1201 Peachtree Street NE, Atlanta, Georgia 30361, or any office thereof.

7.     Defendant Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare and Rehabilitation is a foreign limited liability company and was authorized to do business in and did

business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services and holding the license for Woodland Hills Healthcare and Rehabilitation. At all times material to this action, Woodland Hills HC Nursing, LLC was a control person as defined in Ark. Code Ann § 4-88-113(d)(1) and a joint venturer and civil conspirator with its co-defendants, and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Woodland Hills HC Nursing, LLC is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas, 72201, or any office thereof.

8.    Defendant Woodland Hills HC Property Holdings, LLC is a foreign limited liability company and was authorized to do business and did business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services for Woodland Hills Healthcare and Rehabilitation. At all times material to this action, Woodland Hills HC Property Holdings, LLC was a control person as defined in Ark. Code Ann § 4-88-113(d)(1) and a joint venturer and civil conspirator with its co-defendants, and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Woodland Hills HC Property Holdings, LLC is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas, 72201, or any office thereof.

9.    Defendant Adcare Operations, LLC is a foreign limited liability company and was authorized to do business in and did business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services for Woodland Hills Healthcare and Rehabilitation. At all times material to this action, Adcare Operations, LLC was a control person as defined in Ark. Code Ann § 4-88-113(d)(1) and a joint venturer and civil conspirator with its co-defendants, and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Adcare Operations, LLC is CT Corporations Systems, 1201 Peachtree Street NE, Atlanta, Georgia, 30361.

4

10.   Richard West is an Arkansas citizen and was the administrator of Woodland Hills Healthcare and Rehabilitation during the residency of Fred Rice. The causes of action making the basis of this suit arise out of Richard West's administration of Woodland Hills Healthcare and Rehabilitation during the residency of Fred Rice. Defendant Richard West may be served with process at his last known address: P.O. Box 264, Royal, Arkansas 71968.

11.   Jacquelyn Campbell is an Arkansas citizen. Jackie Campbell was the Director of Nursing of Woodland Hills Healthcare and Rehabilitation during the residency of Fred Rice. The causes of action making the basis of this suit arise out of Jackie Campbell's direction of nursing of Woodland Hills Healthcare and Rehabilitation during the residency of Fred Rice. Defendant Jackie Campbell may be served with process at her last known address: 101 Ricky Raccoon Dr., Jacksonville, Arkansas 72076.

12.   Plaintiff is listing twenty John Does as potential defendants. Kyle P. Ludwig, the attorney for the Plaintiff, will file an Affidavit as to Unknown Tortfeasors at the time of the filing of this Complaint. Plaintiff reserves the right to file as to additional parties, and serve those additional parties who may be additional defendants, pursuant to Ark. Code Ann. § 16-56-125 and other statutes dealing with the John Doe procedure in this state. Plaintiff alleges that there may be additional defendants, described herein as John Does I through IX, who had authority to affect, make, enforce, change, or otherwise implement policies, procedures, budgets, staffing or other aspects of the nursing home including, but not limited to, those which relate or refer to any of the allegations in this Complaint; John Does X through XV, which are temporary staffing agencies or the agents or employees of same who may have provided negligent or below-standard care to Fred Rice, and John Does XVI through XX, the estates of any Defendants, named or unnamed, who are deceased or become deceased before service of this Complaint. The Court has jurisdiction over the subject matter and the parties to this action, and venue is proper in this Court.

5

## FACTUAL ALLEGATIONS

13.    The term "Nursing Home Defendants" or "Defendants" used in this suit refers to Adcare Health Systems, Inc., Adcare Administrative Services, LLC, Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare and Rehabilitation, Woodland Hills HC Property Holdings, LLC, Adcare Operations, LLC, Richard West, Jackie Campbell and John Does I-XX.

14.    The term "Administrator Defendant" used in this suit refers to Richard West.

15.    The term "Director of Nursing Defendant" used in this suit refers to Jackie Campbell.

16.    The Defendants collectively controlled the operation, planning, management, and staffing of the Facility, including control of marketing, human resources management, training, staffing, creation and implementation of Facility policies and procedures, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

17.    The Defendants operated as a joint venture/enterprise for the purposes of streamlining and furthering their similar business interests in maximizing revenues at the Adcare nursing homes and minimizing expenses like wages, supervision, and needed training. Upon information and belief, the licensee, Woodland Hills HC Nursing, LLC, and the facility housing the licensee, Woodland Hills HC Property Holdings, were beneficially owned at all times during Fred Rice's residency by Adcare Health Systems, Inc. and Adcare Operations, LLC, as demonstrated by a chart prepared by Plaintiff's counsel. *Exhibit B*. Adcare Health Systems, Inc. was at the top of the chain of entities. It was the sole member of three subsidiaries – Adcare Operations, LLC; Adcare Consulting, LLC; Adcare Administrative Services, LLC –that all shared officers and directors with each other and with Adcare Health Systems, Inc. At formation, all three entities were managed by David A. Tenwick, Chairman of Adcare Health

6

Systems, Inc's board of directors, and Boyd P. Gentry, its CEO. Both Woodland Hills HC Nursing, LLC and Woodland Hills HC Property Holdings, along with others in the Adcare chain of nursing homes, were operated as one business by some of the same individuals. Corporate control of staffing extended to setting and enforcing staffing budgets, approving and controlling below-market wages for direct-care staff, and reducing staffing budgets without regard for the known and/or knowable acuity of the resident population or needs of individual residents.

18.     The Adcare nursing homes, like Woodland Hills Healthcare and Rehabilitation, were run as appendages of Adcare corporate that lacked financial ability to set their own wages, budget their own labor hours, add needed positions, and exercise statutorily required independent judgment about whom to hire. Defendants operated and managed Woodland Hills Healthcare and Rehabilitation so as to maximize profits by reducing staffing levels below that needed to provide adequate care to residents that would comply with their contractual obligations and state and federal statutory obligations. Labor was the biggest expense for each facility, including Woodland Hills Healthcare and Rehabilitation.

19.     To minimize that expense at Woodland Hills Healthcare and Rehabilitation and other facilities, daily reports about labor hours used at the facilities were compared to labor hours budgeted in a daily labor tracker tool generated and maintained by Adcare corporate. Decisions about staffing ratios, including the hours budgeted for licensed versus unlicensed direct-care staff, included senior Adcare officers like David Rubinstein, Adcare's Chief Operating Officer. In March 2012, Regional Vice President of Operations Melinda Calaway bragged to Rubinstein that "We began individual calls with the facilities today to reduce labor to the budgeted hours as well as the raw food. I met with pharmacy to lock out the usage of OTC's and handling the PA process. We will reach our goals!!! I learn from you all the time!!!!" Beginning in 2014, Arkansas administrators had to send a daily report with the name and clock-in time for each employee who was late for a shift. Adcare corporate personnel directed and approved

7

discipline for latecomers. In at least one instance, Adcare corporate directed a facility administrator to inform other Adcare nursing homes that two terminated personnel could not be rehired. As recently as April 2015, Senior Vice President of Operations John Thomas insisted that facility administrators allow him to view the monthly staffing report required by Arkansas law before the administrators sent it to the Office of Long-Term Care.

20.    In January 2014 Thomas e-mailed Arkansas administrators and instructed:

> As we talked about at the regional meeting, the expectation for 2014 is that you operate your facility based on the approved budget. Being over staffed in direct care or overall is not acceptable.
>
> You and your [Director of Nursing] must be on the same page and work on this daily to ensure you are within your budget.
>
> If you MUST be over you need to contact either Chuck or myself and let us know why you will be over.

That same month, he sent administrators a chart ranking budget performance among all Adcare nursing homes. Facilities that staffed more than 0.25 hours per patient day below the budgeted direct-care staffing were highlighted in green and identified among the "5 Best Direct Care Labor" facilities. *Exhibit C.* The goal was to spend even less than the insufficient budgeted level for labor and create a competitive environment among the Adcare Defendants, administrators, and directors of nursing with financial incentives to save even more money in further violation of the Defendants' contractual and statutory responsibilities.

21.    Just ten days after sending that chart, Thomas was forced to send a second e-mail that included the following:

> IT IS IMPERATIVE THAT YOU DISCUSS YOUR STAFFING EACH DAY IN YOUR DAILY MEETING!!!!!!!!!!!!!!
>
> We can not afford to have [OLTC] survey results as we just received at one of our facilities in Arkansas, $5,000 fine and NO ADMISSIONS for 14 days.
>
> You have heard me harp on this since the day I started, I CAN NOT STAND FOR A FACILITY TO RUN UNDER BUDGET OR UNDER THE MINIMUM STAFFING.

8

In October 2014, he wrote the administrator of a troubled facility and instructed, without referencing resident acuity, "you are severely overstaffed in the nursing dep[artment]. You are running a 3.47ppd."

22.    In 2013, Adcare announced a bonus program for corporate and facility personnel where individual performance indicators for facility administrators were "based on the Five C's and include total occupancy, skilled occupancy, skilled rate, controllable cost, and cash collections." "Controllable costs," for purposes of that program, included labor costs, creating another incentive to understaff the facilities without regard to resident acuity. Indeed, the 2013 bonus plan expanded the 2012 bonus plan in harmful ways. Under the 2012 bonus plan, facility personnel would be ineligible for any bonus if the facility received repeat G-level survey tags in Quality of Care, Quality of Life, or Facility Standards and Practices. The 2013 plan removed that bar. Under the 2013 plan, those serious indicators of resident harm would reduce an eligible bonus by 50%, but would not eliminate bonuses even if bonus eligibility resulted from facility savings achieved by looting the staff budget.

23.    Resident acuity is the best metric for scheduling direct-care nursing-home staff to prevent injuries and suffering in nursing homes. It accounts for the activities staff members will need to perform for each resident in their limited scheduled time. When resident acuity exceeds the work capacity of the scheduled staff, needed care activities and assistance goes undone. That discrepancy between needed and scheduled staff leads directly to injuries such as falls (when residents attempt to reach a bathroom without assistance because call lights are not answered), pressure sores (when residents are not turned regularly), and urinary tract infections (when incontinent care is rushed or skipped or residents are allowed to become dehydrated). Actual staffing levels at Woodland Hills Healthcare and Rehabilitation and the other Adcare facilities had no relationship to the rise and fall of the resident needs or aggregate resident acuity in the facility, though Defendants were required by statute and contract to provide care in accordance

9

with residents' actual needs. In Fred Rice's case, that discrepancy meant he was repeatedly not given attention when he asked for it, causing him to attempt to get out of bed himself and, as a result, injuring himself over and over. That discrepancy meant that staff only installed one bedrail, despite the family's request for two bedrails after he continued to suffer falls on the unprotected side. That discrepancy meant that he developed painful bedsores from the simple failure to turn or alleviate pressure points. That discrepancy meant that he was overmedicated to the point of incoherence, against his family's wishes, and despite repeatedly regaining health during hospital stays, his health immediately declined when he returned to the nursing home, eventually causing his death.

24.    In October 2014, as Mr. Rice's health deteriorated, Regional Vice President John Thomas told Woodland Hills' administrator that "this nursing staff must be reeled in some." Other residents in the understaffed home would have suffered similarly preventable injuries. Increased incidence of these injuries, which would have been apparent to Defendants, signals that inadequate staffing is causing actual harm to residents. Defendants had a legal and moral duty to observe those signs and take action to stop further harm to residents, but they didn't. Upon information and belief, resident acuity was never used in setting the staffing budgets that facility administrators were pressured to adhere to.   But facility administrators – and Adcare corporate – had the means to monitor resident acuity, by hall or by facility, if they wanted. Each facility employed multiple nurses whose job was to assess residents' medical needs and needs for therapeutic services and assistance with activities of daily living.   Data that resulted from that assessment was fed into a Minimum Data Set (or MDS) form prescribed by the federal government to allow governmental payors to determine how much attention from nursing-home staff each resident would need.

25.    Exacerbating the harm from those distorted priorities, profit-based decisions by Adcare corporate diminished administrators' abilities to provide care even within the inadequate,

10

miscalibrated staffing budget. Adcare corporate knowingly set direct-care wages at Adcare homes lower than at competing homes. This made it harder to get and keep staff, and sometimes hurt staff quality. As one facility administrator expressed, "We continue to fight for staff to meet our budgeted numbers each day. Hopefully, the wage adjustments will be approved as all my magician skills have been depleted." Another, former Regional Vice President of Operations Melinda Calaway, told John Thomas that "We are trying to get staff. We are truly the lowest paying in the area" and confessed that CNAs said in exit interviews that "[t]hey are not accustomed to working with the low staff higher resident to CNA ratio. I explained that when people stop leaving it will dilute the amount of residents they care for and that Adcare give[s] the positions." It appears that the wage gap was never addressed, because in March 2015 an administrator from the Fort Smith facility complained that she "had comments from the [CNA]'s. that we pay less than anyone in Fort Smith and that the [CNA]'s we have . . . burned their bridges with the other facilities."

26.    At all relevant times mentioned herein the Defendants owned, operated and/or controlled the operation of the Facility, either directly or through the agency of each other and/or other agents, subsidiaries, servants, or employees. Each Defendant knowingly cooperated through affirmative acts including setting, enforcing, and implementing the insufficient budgets and staffing and admission policies, and did so with the specific intent to harm Fred Rice and others in her position. Each Defendant exercised, and had the right to exercise, some control over the implementation of that harmful plan. Defendants are vicariously liable for the acts and omissions of all persons or entities under their control, either directly or indirectly — including employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools — and jointly and severally liable for the acts and omissions of those persons and entities who were under the direct or indirect control of another joint venturer or co-conspirator, which are imputed to all participants.

27.   Upon information and belief, in another effort to reduce accountability to residents like Fred Rice and further the goals of the joint-venture and civil conspiracy, the Defendants entered a series of financial transactions whereby Adcare's property holdings in Arkansas were mortgaged at or above fair market value to ostensibly disinterested third parties, creating a creditor whose secured interest in Adcare's Arkansas assets would have priority over judgment creditors like the Plaintiff, all the while generating spendable cash for Adcare.

28.   Fred Rice was a resident of Woodland Hills Healthcare and Rehabilitation from approximately February 21, 2014 until his death May 4, 2015.

29.   Defendants were aware of Fred Rice's medical condition and the care he required when they represented that they could adequately care for his needs.

30.   In an effort to ensure that Fred Rice and other residents whose care was partially funded by the government were placed at Woodland Hills Healthcare and Rehabilitation, Defendants held themselves out to the Arkansas Department of Human Services (DHS) and the public at large as being:

> a)  Skilled in the performance of nursing, rehabilitative and other medical support services;
>
> b)  Properly staffed, supervised and equipped to meet the total needs of their nursing home residents;
>
> c)  Able to specifically meet the total nursing home, medical and physical therapy needs of Fred Rice and other residents like him; and
>
> d)  Licensed by DHS and complying on a continual basis with all rules, regulations and standards established for nursing homes.

31.   The Defendants were on notice and aware of problems with resident care, including those failures and deficiencies that caused injury to Fred Rice, at Woodland Hills Healthcare and Rehabilitation, but did nothing to correct those problems. At least twice since Adcare took over control of that Facility, the Arkansas Office of Long-Term Care fined the Facility for staffing violations and enjoined it from accepting new admissions.

12

32.   Moreover, the law provided numerical and other minimum staffing requirements and thresholds below which the facility could never lawfully or contractually venture.   Thus, Defendants knowingly and/or with reckless disregard for the consequences of their actions caused staffing levels at the Facility to be set so that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents.  Upon information and belief, Defendants knowingly established staffing levels that created recklessly poor nurse/resident ratios and disregarded patient acuity levels as well as the minimal time required to perform essential functions.  These acts of malfeasance directly caused injury to Fred Rice and other residents of Woodland Hills Healthcare and Rehabilitation and were known to Defendants.

33.   Under state and federal law, the governing body of a nursing home is composed of individuals or a group in whom the ultimate authority and legal responsibility is vested for conduct of the nursing home.  *See* Ark. Office of Long Term Care R. & Regs. § 100. All long-term care facilities must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility.  *See* 42 C.F.R. § 483.75(d)(1).  The governing body has a legal duty to adopt effective patient care policies, administrative policies and by-laws governing the operation of the facility in accordance with legal requirements of state and federal law.  *See* Ark. Office of Long Term Care R. & Regs. § 301.1.  Upon information and belief, Richard West and Jackie Campbell were members of the governing body of Woodland Hills Healthcare and Rehabilitation and were legally responsible for establishing and implementing policies regarding the management and operation of the facility and for retaining the services of a qualified administrator, in whom the ultimate authority and legal responsibility was vested for patient care in the nursing home.

34.   With a conscious disregard for his rights and safety, Defendants failed to discharge their obligations of care to Fred Rice.  At all times mentioned herein, Defendants, through their

13

corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Fred Rice, as set forth in part in this Complaint. Defendants knew that their facility could not provide the minimum standard of care to the weak and vulnerable residents of Woodland Hills Healthcare and Rehabilitation. The severity of the recurrent poor care, neglect, abuse, and harm inflicted upon Fred Rice while a resident of the facility accelerated the deterioration of her health and physical condition and resulted in physical and emotional injuries, and caused or contributed to his demise. While a resident at Woodland Hills Healthcare and Rehabilitation, Fred Rice sustained multiple injuries including, but not limited to, the following:

    a) Dehydration;

    b) Overmedication;

    c) Failure to timely schedule ordinary grooming/hygiene appointments;

    d) Multiple falls;

    e) Pressure ulcers; and

    f) Death.

35.    The injuries sustained by Fred Rice, as well as the conduct detailed herein and other conduct that discovery will reveal, caused him to lose his personal dignity and to suffer extreme and unnecessary pain, anguish, and emotional trauma.

36.    Throughout his residency at Woodland Hills Healthcare and Rehabilitation, Fred Rice was under the care, supervision and treatment of Defendants and the injuries complained of were proximately caused by the acts and omissions of all Defendants through their joint venture and civil conspiracy. Upon information and belief, the deficient conditions that caused harm to Fred Rice had persisted long enough before his admission that Defendants knew, or should have known, that the conditions had already caused harm to other residents and that Fred Rice too would suffer harm if admitted. Likewise, each new resident admitted during Fred Rice's

14

residency directly diminished the needed care Defendants could provide existing residents, including Fred Rice, and Defendants knew it. Under the circumstances, it was Defendants' duty to stop admitting new residents until the deficiencies had been corrected and the nursing home was prepared to provide adequate care to current residents and new admissions.

37.   The deficiencies identified above, and others, predictably combined in one or more natural and continuous sequences to cause harm to Fred Rice. For example only, the corporate decisions to set direct-care wages below those of competing nursing homes in the area meant that the Adcare facilities (including Woodland Hills Healthcare and Rehabilitation) found it hard to hire and retain staff. Many shifts would have been staffed by workers from a previous shift, so that even shifts not reflected as falling below a statutory minimum ratio were staffed with tired, less productive workers whose presence made it less likely that all Fred Rice's care needs would be met during that shift. Corporate decisions to set staffing budgets and targets at statutory minimums, and to police compliance with those budgets daily, discouraged facility administrators from staffing additional employees even at times of undeniable need.   That reduced the care that was provided to residents of the facility, including Fred Rice. The failure to account for resident acuity when setting staffing budgets meant that even homes that Adcare would have considered well run and well staffed were in fact violating statutory, contractual, and common-law duties to residents like Fred Rice.

## CAUSES OF ACTION AGAINST
## THE NURSING HOME DEFENDANTS

### *Count I      Negligence*

38.     Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

39.     The Nursing Home Defendants owed a non-delegable duty to residents, including Fred Rice, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

40.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Fred Rice, to exercise reasonable care in providing care and services in a safe and beneficial manner.

41.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Fred Rice, to hire, train and supervise employees to deliver care and services to residents in a safe and beneficial manner.

42.     The Nursing Home Defendants owed a non-delegable duty to residents, including Fred Rice, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

43.     The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Fred Rice, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

44.     The Nursing Home Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse, and neglect of Fred Rice. The negligence of Defendants includes, but is not limited to, the following acts and omissions:

        a) The failure to ensure that Fred Rice attained and maintained his highest level of physical, mental, and psychosocial well-being;

16

b) The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of Fred Rice;

c) The failure to increase the number of nursing personnel to ensure that Fred Rice received timely and accurate care assessments, and proper treatment, medication and diet;

d) The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Fred Rice throughout his residency;

e) The failure to increase the number of nursing personnel at the facility to ensure that Fred Rice:

    1. Received timely and accurate care assessments;

    2. Received proper treatment, medication, and diet; and

    3. Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

f) The failure to adequately screen, evaluate, and check references, test for competence and use ordinary care in selecting nursing personnel to work at the facility;

g) The creation of and/or the failure or refusal to identify and correct the injuries, conditions, and circumstances described in paragraph 34 *supra* and exhibited by Fred Rice;

h) The failure to terminate employees at the facility assigned to Fred Rice who were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Arkansas Department of Human Services and the Office of Long Term Care;

i) The failure to assign nursing personnel at the facility duties consistent with their education and experience based on:

    1. Fred Rice's medical history and condition, nursing and rehabilitative needs;

    2. The characteristics of the resident population residing in the area of the facility where Fred Rice was a resident; and,

    3. The nursing skills needed to provide care to such resident population.

j) The failure by the members of the governing body of the facility to discharge their legal and lawful obligation by (1) ensuring that the rules and regulations designed to protect the health and safety of residents, such as Fred Rice, as promulgated by the Arkansas Department of Human Services and the Arkansas Office of Long Term Care, were consistently complied with on an ongoing basis and (2) ensuring appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

k) The failure to adopt adequate guidelines, policies, and procedures of the facility for documenting, maintaining files, investigating and responding to any

17

complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of the facility, an employee of the facility or any interested person;

l) The failure to maintain medical records on Fred Rice in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible and systematically organized with respect to diagnosis, treatment and assessment and establishment of appropriate care plans of care and treatment;

m) The failure to properly in-service and orient employees to pertinent patient care needs to maintain the safety of residents;

n) The failure by all Defendants through their joint venture to continuously assess whether the admission of new residents would diminish the facility's ability to care for the existing residents for whom the facility had already assumed duties of care; and

o) A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Fred Rice.

45.    The Nursing Home Defendants further breached their duty of care to Fred Rice by violating certain laws and regulations in force in the State of Arkansas at the time of the occurrences discussed herein including, but not limited to, the following:

a) By failing to comply with rules and regulations promulgated by the Arkansas Department of Human Services, Division of Social Services, Office of Long Term Care, pursuant to authority expressly conferred by Act 28 of 1979 (Ark. Code Ann. § 20-10-202, *et seq.*) and published in the Long Term Care (LTC) Provider manual on April 8, 1984, and the supplements thereto, and federal minimum standards imposed by the United States Department of Health and Human Services;

b) By failing to ensure that abuse prevention policies were developed and implemented to include analyses of the physical environment and the assessment, care planning and monitoring of residents with needs and behaviors that might lead to conflict;

c) By failing to provide the necessary care and services to attain or maintain the highest practicable, physical, mental and psychosocial well-being of Fred Rice in accordance with the comprehensive assessment and plan of care;

d) By failing to ensure a nursing care plan based on Fred Rice problems and needs was established that contained measurable objectives and timetables to meet his medical, nursing, and mental and psychosocial needs as identified in his comprehensive assessment;

e) By failing to review and revise Fred Rice nursing care plan when her needs changed;

18

f) By failing to treat Fred Rice courteously, fairly and with the fullest measure of dignity;

g) By failing to provide sufficient nursing staff and nursing personnel to ensure that Fred Rice attained and maintained his highest practicable physical, mental and psychosocial well-being;

h) By failing to provide a safe environment;

i) By failing to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident; and

j) By criminally abusing and neglecting Fred Rice and by failing to report that abuse in violation of the Adult and Long-Term Care Facility Resident Maltreatment Act, Ark. Code Ann. §§ 12-12-1701 *et seq.*

46. The Nursing Home Defendants, through their joint venture, were further negligent by infringing upon and depriving Fred Rice of the rights guaranteed by Ark. Code Ann. §§ 20-10-1201 *et seq.* including, but not limited to, the following:

a) The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activates, and therapeutic and rehabilitative services consistent with the resident care plan for Fred Rice, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

    1. The right to receive adequate and appropriate custodial service, defined as care for Fred Rice which entailed observation of diet and sleeping habits and maintenance of a watchfulness over her general health, safety, and well-being; and

    2. The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Mr. Rice or her designee or legal representative, which included a comprehensive assessment of the needs of Mr. Rice a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b) The right to regular, consultative, and emergency services of physicians;

c) The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d) The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Mr. Rice, and not directly furnished by the licensee;

e) The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by

19

nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f)  The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g)  The right to be free from mental and physical abuse, and from physical and chemical restraints;

h)  The right of Mr. Rice to have privacy of his body respected in treatment and in caring for his personal needs;

i)  The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents; and

j)  The right to participate in social, religious, and community activities.

47.  A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above.  Each of the foregoing acts of negligence on the part of the Nursing Home Defendants was a proximate cause of Fred Rice's injuries as more specifically described herein.  Fred Rice suffered personal injury including pain and suffering, mental anguish and emotional distress.

48.  As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish and emotional distress in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT II
### *Medical Malpractice*

49.  Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

20

50.   The Nursing Home Defendants are potentially medical care providers as defined by Ark. Code Ann. § 16-114-201(2) and/or liable for medical care providers as defined by Ark. Code Ann. § 16-114-201(2).

51.   The Nursing Home Defendants owed a non-delegable duty to residents, including Fred Rice, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

52..   The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Fred Rice, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

53.   The Nursing Home defendants failed to meet the applicable standards of care and violated their duty of care to Fred Rice through mistreatment, abuse and neglect. The Nursing Home Defendants failed to adequately supervise nurses and aides and failed to hire sufficient nurses and aides. As such, the nurses and aides were unable to provide Fred Rice the requisite care, and as a result, negligent acts occurred as set forth herein. The medical negligence of Defendants include, but are not limited to, the following acts and omissions:

   a) The failure to ensure that Fred Rice received the following:
      1. Timely and accurate care assessments;
      2. Proper treatment, medication and diet;
      3. Necessary supervision; and
      4. Timely nursing and medical intervention due to a significant change in condition.
   b) The failure to provide, implement, and ensure adequate nursing care plan revisions and modifications as the needs of Fred Rice changed;
   c) The failure to provide, implement and ensure that an adequate nursing care plan for Fred Rice was followed by nursing personnel;
   d) The failure to provide Fred Rice with adequate and appropriate nursing care, treatments, and medications;
   e) The failure to ensure that Fred Rice was assessed in order to receive adequate and proper nutrition, fluids, and therapeutic diet;

21

    f) The failure to provide adequate care and treatment to Fred Rice; and

    g) The failure to adequately and appropriately monitor Fred Rice and recognize significant changes in his health status.

    54.   A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Nursing Home Defendants was a proximate cause of Fred Rice's injuries, which were foreseeable. Fred Rice suffered personal injuries, including excruciating pain and suffering, mental anguish and emotional distress. Plaintiff additionally incorporates, against Director of Nursing Defendant Jackie Campbell, the allegation in paragraph 115 *infra* that Campbell failed to meet her statutory, contractual, and common-law duties to ensure that medical irregularities and quality-of-care issues reported to her by nursing staff were promptly redressed. Upon information and belief, the injuries Fred Rice suffered were brought to Jackie Campbell's attention and she failed to rectify either the nursing or administrative issues that caused those injuries. Upon information and belief, her actions and omission, in addition to constituting ordinary negligence, fell below the applicable professional standard of care.

    55.   The Nursing Home Defendants were negligent and reckless in breaching the duties owed to Fred Rice under the Medical Malpractice Act for the reasons specifically enumerated in this Complaint. At all times during Fred Rice's residency, he was under the continuous care and treatment of the Nursing Home Defendants, tolling the applicable statutes of limitation.

    56.   As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Fred Rice suffered injuries as described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Nursing Home Defendants, including, but not limited to, medical expenses, pain and suffering, mental anguish and emotional distress in an amount exceeding that required for federal court jurisdiction

in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT III

### *Breach of the Admission Agreement*

57.     Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

58.     Upon information and belief, before being admitted to Woodland Hills Healthcare and Rehabilitation, Fred Rice was required to enter into a Resident Admission Agreement, whereby the facility agreed to provide nursing and custodial care, necessary goods, services, and/or treatment to Fred Rice in exchange for valuable consideration. Plaintiff does not attach a copy of the agreement hereto because he does not have one. Upon information and belief, Defendants have the original or a copy in their possession.

59.     Fred Rice, or those acting on his behalf, did what the Agreement for Care required of him, in that valuable consideration was paid for the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Nursing Home Defendants promised to provide.

60.     The Nursing Home Defendants breached their contractual duties by failing to provide the care and services as described in the agreement, causing damage to Fred Rice.

61.     As a result, Plaintiff is entitled to compensatory damages and consequential damages.

62.     Plaintiff is entitled to seek punitive damages for breach of contract, because the Nursing Home Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the admissions agreement would naturally and probably result in injury or damage, yet the Nursing Home Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

23

## COUNT IV

### *Violations of the Long-Term Care Facility*
### *Residents Rights Act*

63.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

64.    Among the Nursing Home Defendants, the licensee(s) of Woodland Hills Healthcare and Rehabilitation had a statutorily-mandated duty to provide Fred Rice with her basic, nursing home resident's rights as set forth in the Protection of Long-Term Care Facility Residents Act, Ark. Code Ann. §§ 20-10-1201 *et seq.*

65.    The Protection of Long-Term Care Facility Residents Act mandates the development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the maintenance and operation of long-term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, like Fred Rice.

66.    The Protection of Long-Term Care Facility Residents Act mandates every licensed facility shall comply with all applicable standards and rules of the Office of Long-Term Care of the Arkansas Department of Human Services.

67.    The statutory duty imposed upon the facility licensee(s) to prevent deprivation or infringement of the resident's rights of Fred Rice was non-delegable. Thus, among the Nursing Home Defendants, the licensee(s) is directly liable to Plaintiff for any deprivation and infringement of Fred Rice's resident rights occurring as a result of its own action or inaction, and as a result of the action or inaction of any other person or entity, including employees, agents, consultants, independent contractors and affiliated entities, whether in-house or outside entities, individuals, agencies or pools, as well as any deprivation and infringement of Fred Rice's

24

resident rights caused by the Nursing Home Defendants' policies, procedures, whether written or unwritten, and common practices.

68.   Any person or entity acting as an employee or agent of Fred Rice assumed and undertook to perform the licensee's non-delegable and statutorily-mandated duty to provide Fred Rice nursing home resident's rights as set forth in Ark. Code Ann. §§ 20-10-1201 *et seq.* in the operation and management of Woodland Hills Healthcare and Rehabilitation.

69.   Notwithstanding the responsibility of the licensee to protect and provide for these statutorily-mandated, nursing home resident's rights, the Nursing Home Defendants infringed upon, and Fred Rice was deprived of rights mandated by Ark. Code Ann. §§ 20-10-1201 *et seq.* including, but not limited to, the following:

    a)   The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for Fred Rice, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

        1.   The right to receive adequate and appropriate custodial service, defined as care for Fred Rice which entailed observation of diet and sleeping habits and maintenance of a watchfulness over his general health, safety, and well-being; and

        2.   The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Fred Rice or his designee or legal representative, which included a comprehensive assessment of the needs of Fred Rice, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

    b)   The right to regular, consultative, and emergency services of physicians;

    c)   The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

    d)   The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Fred Rice, and not directly furnished by the licensee;

    e)   The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of

25

dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f) The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g) The right to be free from mental and physical abuse, and from physical and chemical restraints;

h) The right of Fred Rice to have privacy of his body in treatment and in caring for her personal needs;

i) The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents;

j) The right to participate in social, religious, and community activities; and

k) The right to be treated courteously, fairly, and with the fullest measure of dignity.

70.    The aforementioned infringement and deprivation of the rights of Fred Rice were the result of the Nursing Home Defendants' failure to do that which a reasonably careful person would do under similar circumstances. These infringements and deprivations caused Fred Rice physical, economic, noneconomic, and dignitary injuries as set forth herein.

71.    As a result of the aforementioned violations, pursuant to Ark. Code Ann. § 20-10-1209(a)(4), Plaintiff is entitled to recover actual damages against the licensee of the facility. Plaintiff asserts a claim for judgment for actual damages against the Nursing Home Defendants, including, but not limited to, medical expenses, physical pain and suffering, mental anguish and loss of dignity, in an amount to be determined by the jury and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

72.    The infringement or deprivation of the resident's rights of Fred Rice by the Nursing Home Defendants was willful, wanton, gross, flagrant, reckless, or consciously indifferent. Pursuant to Ark. Code Ann. § 20-10-1209(c), Plaintiff is entitled to recover punitive damages against the licensee of the facility.

26

## COUNT IV

### *Breach of the Provider Agreement*

73.   Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

74.   Upon becoming a resident of Woodland Hills Healthcare and Rehabilitation, Fred Rice, as a Medicare and/or Medicaid recipient, became a third-party beneficiary of the contract or provider agreement between the Nursing Home Defendants and the state and federal governments.   Plaintiff, for good cause, is unable to attach a copy of the actual provider agreement upon which this claim is based, because it is in the possession of the Nursing Home Defendants.   However, upon information and belief that agreement tracked the language in the exemplary agreement attached as *Exhibit D*.

75.   For consideration duly paid by Fred Rice, or on his behalf, the Nursing Home Defendants agreed to provide residents with personal and custodial care and professional nursing care in compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein.   In addition, by entering into the agreement, the Nursing Home Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State."   The Nursing Home Defendants further agreed that "the rights and privileges of the residents [were] of primary concern to the parties" and covenanted to "protect and preserve" the rights of the residents.   The parties to the contract agreed "that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement . . . ."

27

76.  As the name implies, the provider agreement exists to pay for and provide for resident, personal, or custodial care and professional nursing care. The provider agreements between the Nursing Home Defendants and the state and federal government were clearly intended to benefit the residents of Woodland Hills Healthcare and Rehabilitation including Fred Rice.

77.  In addition to that agreement with the government to provide care to all residents, federal law required the facility to assess residents' individual medical needs through a worksheet called a Minimum Data Set.  On the MDS that is submitted for each Medicaid recipient quarterly, the provider is required to certify the accuracy and truth of the MDS assessment as a condition of payment:

> I certify that the accompanying information accurately reflects resident assessment information for this resident and that I collected or coordinated the collection of this information on the dates specified. To the best of my knowledge, this information was collected in accordance with applicable Medicare and Medicaid requirements. I understand that this information is used as a basis for ensuring that residents receive appropriate and quality care, and as basis for payment from federal funds. I further understand that payment of such federal funds and continued participation in the government-funded health care programs is conditioned on the accuracy and truthfulness of this information, and that I may be personally subject to or may subject my organization to substantial criminal, civil, and/or administrative penalties for submitting false information. I also certify that I am authorized to submit this information by this facility on its behalf.

78.  The Nursing Home Defendants breached the provider agreement and committed multiple acts of nonfeasance in failing to provide the care, goods, and services to industry standards, as required by law and as agreed, including but not limited to:

> a)  Nonfeasance in failing to provide, as promised, the care and services for Fred Rice to attain or maintain her highest practicable physical, mental, and psychosocial well-being, in accordance with a comprehensive assessment and plan of care;
>
> b)  Nonfeasance in failing to provide, as promised, dietary services, including special diets, supplemental feedings, special delivery preparation, assistance, and equipment required for preparing and dispensing oral feedings and special feeding devices;

28

   c) Nonfeasance in failing to provide, as promised, personal or custodial services and nursing care;

   d) Nonfeasance in failing, as promised, to implement policies and procedures so as to prevent infringement or deprivation of Fred Rice's rights as a resident of a long term care facility;

   e) Nonfeasance in failing to provide, as promised, assistance to Fred Rice in developing and carrying out a plan of care;

   f) Nonfeasance in failing to comply, as promised, with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

   g) Nonfeasance in failing to staff Woodland Hills Healthcare and Rehabilitation with sufficient personnel to adequately meet the needs of Fred Rice, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

79.   As a result of the Nursing Home Defendants' breach of the provider agreement, Plaintiff asserts a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment, in an amount that exceeds that required for federal court jurisdiction in diversity of citizenship cases.

80.   The Nursing Home Defendants are also liable for all consequential damages, because the Nursing Home Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to Fred Rice, and, under the circumstances, the Nursing Home Defendants should have understood that it had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

81.   Plaintiff seeks judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Nursing Home Defendants to provide the care, goods, and services promised under the provider agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

82.   Plaintiff is entitled to seek punitive damages for breach of contract, because the Nursing Home Defendants knew or ought to have known, in the light of the surrounding

29

circumstances, that their nonfeasance in breach of the provider agreement would naturally and probably result in injury or damage, yet the Nursing Home Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

## COUNT V
### *Deceptive Trade Practices*

83.   Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

84.   At all times pertinent to this cause of action, Fred Rice was an "elder person" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a).  As an "elder person" within the meaning of the Deceptive Trade Practices Act, Plaintiff has a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

85.   At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. § 4-88-107(a) provides that it is unlawful to knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of physical infirmity or a similar factor and engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

86.   Ark. Code Ann. § 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for any person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

87.   On information and belief, the Nursing Home Defendants made statements to Arkansas consumers regarding the services provided and quality of care at Woodland Hills

Healthcare and Rehabilitation that may have, tended to, or did deceive or mislead Arkansas consumers.

88.   For example, the Nursing Home Defendants were required by federal and state regulations to devise a care plan for each resident based upon each resident's individual needs. On information and belief, the Defendants communicated these care plans to residents and their families, including Fred Rice, which may have, tended to, or did lead them to believe that the Defendants would deliver – and had the staff and resources to deliver – the care outlined in the plans. These representations were false and misleading.

89.   Additionally, the Nursing Home Defendants made misrepresentations regarding the care they provided in marketing materials directed to consumers in Arkansas.

90.   The Nursing Home Defendants' trade practices also are, and have been throughout the residency of Fred Rice, unconscionable, because the nursing home residents, such as Mr. Rice, constitute a vulnerable population: they are elderly, ill, infirm, and often deteriorating.

91.   The Nursing Home Defendants also engaged in, and have engaged in throughout the residency Mr. Rice, substantively unconscionable trade practices by providing care that is so inadequate to meet the needs of residents that it results in a gross disparity between the value received by the residents for the services provided and the cost of the services.

92.   The Nursing Home Defendants knew that they were not meeting, and did not have sufficient CNA staff to meet, the basic care needs of their residents as mandated by state and federal laws and regulations.  The Nursing Home Defendants also knew that many residents were unable to protect their own interests because of age or disease-related cognitive impairments and, once admitted, could not choose to remove themselves from the facility despite the poor care they received. Defendants knew or should have known that family members and other visitors whose judgments would substitute for the impaired residents', would be unable to

appreciate the full scope of deficiencies at the facility without medical training and constant observation of the care provided.

93.   The conduct of the Nursing Home Defendants, as described herein, constitutes a deceptive practice in violation of the Deceptive Trade Practices Act. The Nursing Home Defendants violated the Protection of Long Term Care Facilities Residents' Act and federal law, which is a per se violation of the Deceptive Trade Practices Act. The Nursing Home Defendants also failed to inform Plaintiff in the Nursing Home Defendants' standard admission agreement that the facility routinely does not meet minimum staffing requirements imposed by state and federal law.

94.   The Nursing Home Defendants engaged in an unconscionable, false, and/or deceptive act or practice in business, commerce and/or trade by marketing themselves and holding themselves out to the public and Fred Rice as being able to meet the needs of elder residents of Woodland Hills Healthcare and Rehabilitation. The Nursing Home Defendants profited greatly as a result of their deceptive trade practices, but the Nursing Home Defendants were aware that Woodland Hills Healthcare and Rehabilitation could not meet the needs of its residents, including Fred Rice.

95.   As a direct and proximate result of the Nursing Home Defendants' wrongful conduct, Plaintiff has suffered actual damages.

32

## COUNT VI

### *Civil Conspiracy*

96.   Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

97.   Defendants entered into various implicit and explicit agreements whereby persons other than the facility administrator, who was charged by law with staffing obligations, determined facility staffing levels and practices that are part of the factual basis for each cause of action asserted herein. The Defendants knowingly understaffed the Facility in violation of state and federal laws and regulations, and common-law duties, for profit at the expense of the residents. They concealed the history of chronic understaffing at the Facility from the residents in furtherance of the conspiracy to understaff, and engaged in other acts which were improper as discussed herein and conducted in furtherance of the civil conspiracy.

98.   The actions taken by the Defendants taken in furtherance of this conspiracy and common plan and design were unlawful, oppressive and immoral in violation of the contractual, statutory, and common-law duties outlined in this Complaint and were carried out against the elderly and infirm with the specific intent to harm residents, like Fred Rice. Defendants' actions in joining and maintaining this conspiracy contributed to the injuries described in this Complaint apart from the injurious acts of the individual members, including by preventing the co-conspirators and persons affiliated with the Facility from taking corrective action.

99.   As a direct and proximate result of the actions taken by the Defendants taken in furtherance of this conspiracy and common plan and design, Fred Rice was harmed. The Defendants are jointly and severally liable for all compensatory and punitive damages including, but not limited to, medical expenses, extreme pain and suffering, loss of dignity and loss of life, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT VII

### *Intentional Interference with Contractual Relationship*

100.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows:

101.    Plaintiff alleges that Defendants are jointly and severally liable as joint venturers and co-conspirators as to compensatory and punitive damages stemming from the breach of contract that is the subject of Count III of this Complaint. In the alternative, Plaintiff pleads as follows:

102.    Defendants Adcare Health Systems, Inc.; Adcare Administrative Services, LLC; Woodland Hills HC Property Holdings, LLC; and Adcare Operations, LLC (the "Non-Signatory Defendants") are liable for intentionally interfering with the admission agreement that governed Fred Rice's residence at the facility. Pursuant to that valid contract, the facility agreed to provide nursing and custodial care, necessary goods, services, and/or treatment to Fred Rice in exchange for valuable consideration. The promised nursing and custodial care, necessary goods, services, and/or treatment had considerable value to Fred Rice, because he could no longer care for himself and proper care was needed to sustain his health and life. The Non-Signatory Defendants intentionally frustrated, prevented, disrupted, and otherwise interfered with the facility's performance of those known contract obligations, including by inducing the facility to breach legal and contract duties and incur statutory and common-law liabilities to Fred Rice through harmful understaffing.

103.    Those acts of interference were dishonest, malicious, oppressive, wrongful, and immoral. The Non-Signatory Defendants knew that proper staffing levels and unfettered, resident-focused facility administration were needed to prevent resident harm. They forced the facility to, *inter alia,* staff at or below state minimum without regard to resident acuity or resulting harm because it profited the Non-Signatory Defendants to do so. At all times during

34

that interference, they acted either on their own behalf or at the behalf of the other Non-Signatory Defendants.

104.    As a result of the disrupted performance of contract duties, Fred Rice suffered extreme pain and suffering, and serious physical injuries that led to his early death. The Defendants are jointly and severally liable for all compensatory and punitive damages including, but not limited to, medical expenses, extreme pain and suffering, loss of dignity and loss of life, plus costs and all other relief to which Plaintiff is entitled by law.

## CAUSES OF ACTION AGAINST THE ADMINISTRATOR DEFENDANT
### Factual Allegations

105.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

106.    Richard West was the administrator at Woodland Hills Healthcare and Rehabilitation during the residency of Fred Rice.

107.    As the administrator of Woodland Hills Healthcare and Rehabilitation, Richard West was responsible for ensuring that the facility complied with all state and federal regulations related to nursing facilities. Richard West had a duty to administer the facility in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychological well-being of each resident. The nursing facility, under the leadership of its administrators, is also required to operate and provide services in compliance with all applicable federal, state, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such facilities. In addition, as a member of the facility's governing body, Richard West had a duty to promulgate and implement policies and procedures for the operation and management of

35

Woodland Hills Healthcare and Rehabilitation. Defendant Richard West breached the duty of care he owed to Fred Rice.

## COUNT VIII
### *Negligence*

108.  Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

109.  Richard West owed a duty to the residents, including Fred Rice, to provide services as a reasonable administrator within accepted standards for a nursing home administrator.

110.  The Administrator Defendant breached the duties owed to the residents of Woodland Hills Healthcare and Rehabilitation, including Fred Rice, by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides, and as such, the nurses and nurses' aides were unable to provide Fred Rice the care he required. The negligence of the Administrator Defendant include, but is not limited to, the following acts and omissions:

a)  Failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Fred Rice received appropriate nursing care;

b)  Failure to ensure that Fred Rice was provided with basic and necessary care and supervision;

c)  Failure to adequately hire, train, supervise, and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Fred Rice received care, treatment, and services in accordance with state and federal law;

d)  Failure to assign nursing personnel at Woodland Hills Healthcare and Rehabilitation duties consistent with their education and experience based on:

1.  Fred Rice's medical history and condition, nursing, and rehabilitative needs;

2.  The characteristics of the resident population residing in the area of the facility where Fred Rice was a resident; and

3.  Nursing skills needed to provide care to such resident population;

e)  The failure to provide sufficient numbers of qualified personnel to ensure that Fred Rice was provided with a safe environment and was protected from abuse and mistreatment by the correct use of reasonable safety measures;

36

f) The failure to properly in-service and orient employees to pertinent resident care needs to maintain the safety of residents;

g) The failure to protect Fred Rice from abuse and neglect; and

h) The failure to provide adequate supervision to the nursing staff so as to ensure that Fred Rice received adequate and proper care.

111.    A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in devastating injuries to Fred Rice.

112.    As a direct and proximate result of the Administrator Defendant's negligent conduct, Plaintiff asserts a claim for judgment for all compensatory damages against the Administrator Defendant, including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, disability, degradation, loss of personal dignity and emotional distress in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## CAUSES OF ACTION AGAINST THE DIRECTOR OF NURSING DEFENDANT

### Factual Allegations

113.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

114.    Jackie Campbell was the director of nursing at Woodland Hills Healthcare and Rehabilitation during the residency of Fred Rice.

115.    As director of nursing of Woodland Hills Healthcare and Rehabilitation, Jackie Campbell was responsible for ensuring that the facility complied with all state and federal regulations related to nursing. Jackie Campbell had a duty to direct the nursing staff in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychological well-being of each resident. The nursing staff, under the leadership of its director, is also required to operate and provide services in compliance with all applicable federal, state, and local laws, regulations, and codes, and with accepted

37

professional standards and principles that apply to professionals providing services in such facilities. The nursing staff had a duty to report medical irregularities and quality of care issues to the director of nursing, who had statutory, contractual, and common-law duties to ensure that that the issues were promptly redressed. Upon information and belief, the injuries Fred Rice suffered were brought to Jackie Campbell's attention and she failed to rectify either the nursing or administrative issues that caused those injuries. In addition, as a member of the facility's governing body, Jackie Campbell had a duty to promulgate and implement policies and procedures for the operation and management of Woodland Hills Healthcare and Rehabilitation. Defendant Jackie Campbell breached the duty of care she owed to Fred Rice.

## COUNT X
### *Negligence*

116. Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

117. Jackie Campbell owed a duty to the residents, including Fred Rice, to provide services as a reasonable director of nursing within accepted standards for a nursing home registered nurse.

118. The director of nursing Defendant breached the duties owed to the residents of Woodland Hills Healthcare and Rehabilitation including Fred Rice, by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides, and as such, the nurses and nurses' aides were unable to provide Fred Rice the care she required. The negligence of Jackie Campbell includes, but is not limited to, the following acts and omissions:

   a) Failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Fred Rice received appropriate nursing care;
   b) Failure to ensure that Fred Rice was provided with basic and necessary care and supervision;

38

c) Failure to adequately hire, train, supervise, and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Fred Rice received care, treatment, and services in accordance with state and federal law;

d) Failure to assign nursing personnel at Woodland Hills Healthcare and Rehabilitation duties consistent with their education and experience based on:

    1. Fred Rice's medical history and condition, nursing, and rehabilitative needs;

    2. The characteristics of the resident population residing in the area of the facility where Fred Rice was a resident; and

    3. Nursing skills needed to provide care to such resident population;

e) The failure to provide sufficient numbers of qualified personnel to ensure that Fred Rice was provided with a safe environment and was protected from abuse and mistreatment by the correct use of reasonable safety measures;

f) The failure to properly in-service and orient employees to pertinent resident care needs to maintain the safety of residents;

g) The failure to protect Fred Rice from abuse and neglect; and

h) The failure to provide adequate supervision to the nursing staff so as to ensure that Fred Rice received adequate and proper care.

119.   A reasonably careful director of nursing would have foreseen that the failure to provide the ordinary care listed above would result in devastating injuries to Fred Rice.

120.   As a direct and proximate result of the director of nursing Defendant's negligent conduct, Plaintiff asserts a claim for judgment for all compensatory damages against the Director of Nursing Defendant, including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, disability, degradation, loss of personal dignity and emotional distress in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, as Special Administrator of the Estate of Fred Rice, deceased, and on behalf of the wrongful death beneficiaries of Fred Rice, prays for judgment against Defendants as follows:

1.     For damages in an amount adequate to compensate Plaintiff for the injuries and damages sustained and exceeding that required by federal court jurisdiction in diversity of citizenship cases.

2.     For all general and special damages caused by the alleged conduct of Defendants.

3.     For the costs of litigating this case.

4.     For prejudgment and post-judgment interest.

5.     For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204.

6.     For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Fred Rice and to deter Defendants and others from repeating such atrocities.

7.     For all other relief to which Plaintiff is entitled.

Respectfully submitted,

*Kyle P. Ludwig*

Gene A. Ludwig, Ark. Bar No. 82009
Kale L. Ludwig, Ark. Bar No. 2010187
Kyle P. Ludwig, Ark. Bar No. 2012089
Ryan K. Culpepper, Ark Bar No. 2012093
Jennifer A. Wells, Ark. Bar No. 2010171

LUDWIG LAW FIRM, PLC
1 Three Rivers Drive
Little Rock, Arkansas 72223
Telephone: (501) 868-7500
Facsimile: (501) 868-7501

*Attorneys for Plaintiff*

40

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jun-28  11:31:47
60PR-16-606
C06D14 : 1 Page

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
PROBATE DIVISION

No. 60PR-16-606

IN THE MATTER OF THE ESTATE OF FRED RICE, deceased

### LETTERS SPECIAL OF ADMINISTRATION

GREGORY RICE, whose address is 4832 Jersey Ridge Apt. 5, Davenport, IA 52807,

having been appointed and qualified as Special Administrator of the Estate of FRED

RICE, who died on May 4, 2015, is hereby authorized to act as Special

Administrator for and in behalf of the Estate and for the sole purpose of investigating and

pursuing certain nursing home claims.

ISSUED this date: <u>28-JUN-2016</u>

LARRY CRANE,   CIRCUIT CLERK

By: MARYLIN L HARRIS, PULASKI CLERK



ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jun-28 16:07:33
60CV-16-3508
C06D06 : 1 Page

EXHIBIT
B





ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jun-28 16:07:33
60CV-16-3508
C06D06 : 1 Page

|  | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | AdCare Daily Rankings | | | | | | |
| 2 | As of: 01/21/14 | | | | | | | | | | |
| 3 | | | | 5 Best Direct Care Labor | | | | | | 5 Best Skilled Census | |
| 4 | | | Actual | Budget | Favorable | | | | Actual | DEC 2013 Avg | Favorable |
| 5 | Facilitiy | | | | | | Facility | | | | |
| 6 | | 1) | 2.79 | 3 31 | 0.52 | | | 1) | 65 | 51 | 14 |
| 7 | | 2) | 2.96 | 3 23 | 0.27 | | Grand Lake | 2) | 20 | 7 | 13 |
| 8 | | 3) | 3.65 | 3 91 | 0.26 | | Legacy | 3) | 22 | 10 | 12 |
| 9 | Betty Ann | 4) | 2.62 | 2.86 | 0.24 | | Powder Springs | 4) | 36 | 26 | 10 |
| 10 | Thomasville | 5) | 2 86 | 3.06 | 0.20 | | Tara | 5) | 35 | 25 | 10 |
| 11 | | | | | | | | | | | |
| 12 | | | | | | | | | | | |
| 13 | | | | | | | | | | | |
| 14 | | | | 5 Worst Direct Care Labor | | | | | | 5 Worst Skilled Census | |
| 15 | | | Actual | Budget | Unfavorable | | | | Actual | DEC 2013 Avg | Unfavorable |
| 16 | Facilitiy | | | | | | Facilitiy | | | | |
| 17 | Homestead Manor | 1) | 3.68 | 2.95 | (0.73) | | Sumter | 1) | 9 | 14 | (5) |
| 18 | Living Center | 2) | 3 75 | 3.17 | (0.58) | | Homestead Manor | 2) | 2 | 5 | (3) |
| 19 | Mountain Trace | 3) | 3 24 | 3.08 | (0.16) | | Stone County | 3) | 9 | 12 | (3) |
| 20 | Glenvue | 4) | 3.38 | 3.25 | (0.13) | | Northridge | 4) | 5 | 7 | (2) |
| 21 | Hearth & Care | 5) | 3 21 | 3.09 | (0.12) | | Glenvue | 5) | 16 | 18 | (2) |



EXHIBIT
tabbies
C

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jun-28  16:07:33
60CV-16-3508
C06D06 : 2 Pages

## CONTRACT
### TO PARTICIPATE IN THE ARKANSAS NURSING HOME PROGRAM
### ADMINISTERED BY THE DIVISION OF ECONOMIC AND MEDICAL SERVICES
### OFFICE OF LONG TERM CARE
### UNDER TITLE XIX (MEDICAID)

This ___Facility___ agreement made and entered into this the _____ day of _____
by and between _____ Text _____ hereinafter called Provider, and
(to be completed by DEMS)                     (to be completed by DEMS)
(to be completed by DMS)
the Department of Economic and Medical Services, Office of Long Term Care hereinafter called State.

WITNESSETH

I.   Provider agrees that its responsibilities hereunder shall be as follows:

    A.   To keep all records, as set forth in applicable Federal and/or State regulations, and Long Term Care Provider Manuals, and any duly promulgated changes in or additions thereto, and to fully disclose the extent of all services provided to individuals receiving assistance under the State Plan.

    B.   To make available for inspection all records herein specified to satisfy audit requirements under the program; to furnish all such records for audit conduction periodically by State or its designated agents and/or representatives of the Department of Human Services, and the Department of Health and Human Services of the United States of America or its designees or representatives. For all Medicaid recipients these records shall include, but not necessarily be limited to those records as defined in Section A above.

    C.   Provider shall at all times provide State access to the facility, residents, and resident records. Provider expressly agrees not to hinder, impede, or otherwise restrict State from carrying out its official duties, and expressly agrees to reasonably assist State in carrying out its official duties. In this context, "official duties" include inspections, surveys and investigations and reviews as prescribed by State and Federal laws, rules and regulations, and shall allow "observation and recordings made and conducted relative to long term care facilities, long term care residents, and records of or possessed by facility and/or residents. "Observation" includes the right and ability to move in or around the interior and/or exterior, including resident rooms of a long term care facility, unaccompanied (except upon request if the inspector(s)) at any time. "Recordings" include photostatic copies, notes, writings, drawings, and photographs (whether still or motion, in accordance with Section 2 of Ark. Act 33 of 1989), and sound recordings."

    D.   To accept only residents who have met the requirements of the duly promulgated Pre-Admission Screening Program and for whom the facility can provide all required and necessary services. Provider specifically herein agrees to insure availability of all medications prescribed by the resident's physician.

    E.   To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, and Section 504 of the Rehabilitation Act of 1973. Provider agrees herewith that it has been furnished with a copy of the LTC Provider Manual, and shall be bound by all provisions thereof, including any and all changes and/or additions thereto.

    F.   To comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State.

    G.   To meet all requirements of applicable Life Safety Code and all State Fire and Safety Codes.

    H.   Provider will not transfer or discharge any recipient without a minimum of 30 days advance notice to the individual or a responsible person. Provider may transfer or discharge a Medicaid recipient under the following circumstances:

        1.   The transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility.

        2.   The transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility.

        3.   The safety of the individuals in the facility is endangered.

        4.   The health of individuals in the facility would otherwise be endangered.

        5.   The resident has failed, after reasonable and appropriate notice, to pay (or to have paid under Title XIX or Title XVIII) on the resident's behalf an allowable charge imposed by the facility for an item or service requested by the resident and for which a charge may be imposed consistent with federal and state laws and regulations, or

        6.   The facility ceases to operate.

    The notice of transfer or discharge must be made at least 30 days in advance of the resident's transfer or discharge except:

        a.   In a case described in item H(3) or H(4) above,

        b.   In a case described in item H(2) above where the resident's health improves sufficiently to allow for a more immediate transfer or discharge;

        c.   In a case described in item H(1) above where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs; or

        d.   In a case where the resident has not resided in the facility for 30 days

    I.   Provider shall give 30 day notice to the State prior to any change of ownership including a change who or provides for the assumptions of existing liabilities by the new owner



J.  To bill State (Medicaid) only after the service has been provided.

K.  To accept Medicaid reimbursement rates determined by the State as full payment for all Medicaid eligible care and services required by the classification of each resident and rendered by the provider, and make no additional charges to the resident, or to accept any additional payment from the resident, relatives, or responsible parties for that service which is covered under the Medicaid Program.

L.  To promptly refund to the resident or responsible party any unused portion of recipient applied income collected in advance and not owed due to death, discharge or transfer. Recipient income is to be prorated on a per diem basis according to the number of days in the month.

M.  To promptly refund to a resident or other responsible person any deposit or entrance fee collected while awaiting approval of Medicaid eligibility to the extent those days are covered by Medicaid payments.

N.  To provide all services and specific items as defined in the Medical Assistance Reasonable Cost Related Reimbursement Manual for Long Term Care Facilities (MARCRRM-LTCF), or any additions thereto or subsequent manuals. Receipt of Medicaid per diem reimbursement rates is considered payment in full for services and items included in the MARCRRM.

O.  To accept assignment and file a claim in a timely and proper manner with all third party sources, and if said claim is collected from a third party; to reimburse Medicaid up to the amount Medicaid paid for said services.

P.  The $30 Personal Needs Allowance which is provided for by the Medicaid Program for personal expenditures of a resident cannot and shall not be used for any other purpose except as authorized in writing by the resident or responsible party.

Q.  To comply with all State and/or Federal regulations pertaining to resident personal funds and to provide the State access to patient account records or any other financial records maintained by the provider for benefit of the patient. The new owner must specify in writing which owner will be responsible for recipient Medicaid claims and facility account receivable balances resulting from dates of service prior to the ownership change.

Further: Provider agrees that it will not prevent or interfere with the individual or responsible person, or the Office of Long Term Care in the transfer or discharging of a patient when same is appropriate.

II.  The State agrees that it shall have the following responsibilities hereunder.

A.  To make timely payments to Provider for the appropriate Medicaid services provided the eligible Medicaid recipients in accordance with the terms of the LTC Provider Manual or other appropriate regulations and procedures mentioned herein.

B.  To notify Provider of any changes of rules or regulations to be followed hereunder as promptly as is practicable at all times.

C.  To safeguard the confidentiality of any Medicaid records maintained for the State, its agents, and/or fiscal intermediary as specified in Federal and State regulations.

III.  Mutual Covenants, Duties, Responsibilities, and Undertakings

A.  State and Provider mutually agree to comply with all Federal and State laws, rules and regulations.

B.  State and Provider agree that the rights and privileges of the residents are of primary concern to the parties and the parties expressly agree and covenant to protect and preserve those rights and privileges and that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement and may result in immediate termination of this agreement without recourse.

C.  State and Provider agree and covenant that this written instrument constitutes the entirety of the agreement between both parties and no statement or representations not reduced to writing or incorporated herein by express reference shall be binding upon the parties and such statements or representations not incorporated herein by express reference or not contained herein shall constitute no part of this agreement.

IV.  This contract may be terminated in accordance with the following provisions.

A.  This contract may be terminated by either party by giving 30 days written notice to the other party.

B.  This contract may be terminated immediately by State for the following reasons:

1  Federal sanction of Provider.

2.  Change of ownership.

3.  Violation of any provision herein contained.

4.  In accordance with termination procedures as set out in appropriate Federal and/or State regulations or rules by which Provider is bound hereunder.

| Provider | | Division of Economic and Medical Services Office of Long Term Care | |
|---|---|---|---|
| By: _____ | | By: _____ | |
| | (Signature) | | (Signature) |
| Name: _____ | | Name: _____ Carol Shockley | |
| | (Type Name) | | (Type Name) |
| Title: _____ Administrator | | Title: _____ Director, LTC | |
| Date: _____ | | Date: _____ | |

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jun-28 16:07:33
60CV-16-3508
C06D06 : 2 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION, 6TH CIRCUIT

Gregory Rice, as Special Administrator
of the Estate of Fred Rice, and on behalf of
the wrongful death beneficiaries of Fred Rice                    PLAINTIFF

v.

AdCare Health Systems, Inc.; AdCare Administrative Services, LLC;
Woodland Hills HC Nursing, LLC d/b/a Woodland Hills Healthcare
and Rehabilitation; Woodland Hills HC Property Holdings, LLC;
AdCare Operations, LLC; Richard West, in his capacity as
Administrator of Woodland Hills Healthcare and Rehabilitation
during the residency of Fred Rice;
Jackie Campbell, in her capacity as Director of Nursing of
Woodland Hills Healthcare and Rehabilitation during the
residency of Fred Rice; John Does I-IX,
the unknown person or persons who had authority to
affect, make, enforce, change, or otherwise implement
policies, procedures, budgets, staffing or other aspects of the
nursing home including, but not limited to, those which relate or
refer to any of the allegations in this Complaint; John Does X-XV,
the temporary staffing agencies or the agents or employees
of same who may have provided negligent or below-standard care to
Fred Rice, and John Does XVI-XX, the estates of any
Defendants, named or unnamed, who are deceased or become
deceased before service of this Complaint                    DEFENDANTS

## AFFIDAVIT AS TO UNKNOWN TORTFEASORS

State of Arkansas        )
                         )ss.
County of Pulaski        )

I am Kyle P. Ludwig, attorney for Plaintiff. Pursuant to Ark. Code Ann. §16-

56-125, the Complaint alleges a cause of action against nine unknown tortfeasors as

John Does I-XX.

The identities of the other tortfeasors is unknown and, therefore, under the provisions of Ark. Code Ann. § 16-56-125(1989), Plaintiff reserves the right to file a Complaint against unknown tortfeasors when their identities are determined.



KYLE P. LUDWIG

## VERIFICATION

State of Arkansas      )
                       )ss.
County of Pulaski      )

On this day personally appeared before me Kyle P. Ludwig and state that the above and foregoing is true and correct to the best of his knowledge and belief.

WITNESS MY HAND and official seal this 27th day of June, 2016.



GEORGIA FLETCHER, Notary Public

My Commission Expires:

February 15, 2022

_____

(Seal)

GEORGIA L. FLETCHER
MY COMMISSION
EXPIRES: Febru...
Pulaski Cour...

GEORGIA L. FLETCHER
MY COMMISSION # 12265634
EXPIRES: February 15, 2022
Pulaski County

citizen of a state other than Arkansas. For purposes of determining citizenship, the citizenship of a limited liability company is that of its Members. *See GMAC Commercial Credit LLV v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). The penultimate Member of Jonesboro Retirement Residence, LLC is Holiday Acquisition Corp. Holiday Acquisition Corp. is a Delaware Corporation with a principal place of business in New York. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.    This Court has jurisdiction of the subject matter of this proceeding pursuant to 28 U.S.C. §1332, and this case may properly be removed to this Court pursuant to 28 U.S.C. §§1441 and 1446.

6.    Pursuant to the procedural requirements of 28 U.S.C. §1446, Jonesboro Retirement Residence, LLC hereby gives notice of the removal of this cause to the United States District Court for the Eastern District of Arkansas, Western Division.

WHEREFORE, Jonesboro Retirement Residence, LLC prays that this action be removed from the Circuit Court of Craighead County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Western Division, and for all other just and proper relief to which it may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
1401 W. Capitol Ave., Suite 190
Little Rock, Arkansas 72201
(501) 850-0015

By: _____
Kirkman T. Dougherty (Arkansas Bar No. 91133)
Jeffrey W. Hatfield (Arkansas Bar No. 96235)
Kynda Almefty (Arkansas Bar No. 2004197)